IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

**GREENBRIER HOTEL CORPORATION**
**d/b/a THE GREENBRIER; and**

**THELMA R. ADKINS,**
**WILLIAM ARNOLD,**
**DENNIS AUSTIN,**
**GREG SCOTT and**
**ERIC TYGRETT;**

      **Plaintiffs,**

**v.**                              **CIVIL ACTION NO.** 5:13-cv-11644

**UNITE HERE HEALTH, a trust;**

**H.E.R.E.I.U. WELFARE FUND--PLAN UNIT 155,**
**an employee welfare health plan; and**

**JOHN W. WILHELM, GEOCONDA ARGUELLO-**
**KLINE, WILLIAM BIGGERSTAFF, DONNA**
**DeCAPRIO, MAYA DeHART, BILL GRANFIELD,**
**TERRY GREENWALD, CONSTANCE M. HOLT, KAREN KENT,**
**CLETE KILEY, C. ROBERT McDEVITT, LEONARD O'NEILL,**
**HENRY TAMARIN, DONALD TAYLOR, THOMAS**
**WALSH, PAUL ADES, JAMES M. ANDERSON,**
**RICHARD M. BETTY, ALBERT I. CHURCH,**
**JAMES L.  CLAUS, RICHARD ELLIS, GEORGE GREENE,**
**ARNOLD F. KARR, CYNTHIA KISER MURPHY, RUSS**
**MELARAGNI, FRANK MUSCOLINA, WILLIAM NOONAN,**
**JACK M. PENMAN, JOHN SOCHA, HAROLD TAEGEL,**
**GARY WANG, and GEORGE WRIGHT, in their capacity as**
**Trustees;**

      **Defendants.**

## COMPLAINT

      COMES NOW the Greenbrier Hotel Corporation d/b/a The Greenbrier® ("The Greenbrier")

and Thelma R. Adkins, William Arnold, Dennis Austin, Greg Scott and Eric Tygrett (also referred

to, collectively, as "the Participant Plaintiffs"), by counsel, and for their complaint in the above-referenced matter, state as follows:

## I. PARTIES

1.      The Greenbrier is a West Virginia corporation, with its principal place of business located at 300 West Main Street, White Sulphur Springs, West Virginia 24986.

2.      UNITE HERE is a duly qualified labor union doing business in several states, including West Virginia.  It was created in 2004 by a merger of two other labor unions — Hotel Employees and Restaurant Employees International Union ("HEREIU") and UNITE.  HEREIU, now UNITE HERE, established a multi-employer trust, UNITE HERE HEALTH (the "Fund") pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), as amended, and administered in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., as amended.  The Fund was established for the purpose of providing funding for health and welfare benefits, provided by separate plan units, for eligible employees of employers who have entered into collective bargaining agreements ("CBAs") or participation agreements, accepted by the Fund, by which those employers have agreed to make periodic contributions to the Fund.  The Greenbrier was affiliated with and participated in the Fund pursuant to CBAs it entered into with the Greenbrier Council of Labor Unions ("GCLU"), an amalgamation of several local unions that have represented various groups of individuals employed by The Greenbrier, with the respective local unions that represent employees at The Greenbrier, and with the International Union of Security, Police and Fire Professionals of America, Local 405 ("SPFPA Local 405").

3.      Different "plan units" provide benefits to different groups of eligible employees (and their dependents) through the Fund.  The plan unit for The Greenbrier and its eligible

employees (and their dependents) was designated as H.E.R.E.I.U. – Plan Unit 155 (hereinafter "Plan Unit 155").   The Trustees of the Fund and Plan Unit 155 adopted plan documents specifically related to eligible employees (and their dependents) of The Greenbrier and accepted contributions from The Greenbrier and its employees and otherwise operated and maintained Plan Unit 155.   Plan Unit 155 is a separate entity from the Fund.   Plan Unit 155 is a welfare benefit plan within the meaning of ERISA.   The Fund is a trust which acts primarily as a funding vehicle for Plan Unit 155 and other plan units applicable to other employers.   The record of contributions, payments and administrative expenses of Plan Unit 155 are maintained separately from other plan units by the Fund.

4.     Defendants John W. Wilhelm, Geoconda Arguello-Kline, William Biggerstaff, Donna DeCaprio, Maya Dehart, Bill Granfield, Terry Greenwald, Constance M. Holt, Karen Kent, Clete Kiley, C. Robert McDevitt, Leonard O'Neill, Henry Tamarin, Donald Taylor and Thomas Walsh are union trustees ("Union Trustees").   The Union Trustees engage in the management and administration of the Fund, and, more specifically, Plan Unit 155.   They are fiduciaries under ERISA with respect to the Fund and Plan Unit 155.   None of the Union Trustees are residents of West Virginia.

5.     Defendants Paul Ades, James M. Anderson, Richard M. Betty, Albert I. Church, James L. Claus, Richard Ellis, George Greene, Arnold F. Karr, Cynthia Kiser Murphy, Russ Melaragni, Frank Muscolina, William Noonan, Jack M. Penman, John Socha, Harold Taegel, Gary Wang, and George Wright are employer trustees (hereinafter referred to as "Employer Trustees").   The Employer Trustees engage in the management and administration of the Fund, and, more specifically, Plan Unit 155.   They are fiduciaries under ERISA with respect to the Fund and Plan Unit 155.   None of the Employer Trustees are residents of West Virginia.

6.     The Fund acts as Plan Administrator and as the Named Fiduciary under the terms of its Trust Agreements (during relevant times, the Seventh Amended and Restated Agreement and Declaration of Trust ("Seventh Amended Trust"), adopted October 18, 2012, and the Sixth Amended and Restated Agreement and Declaration of Trust (the "Sixth Amended Trust," adopted March 6, 2003), and various plan unit Rules and Regulations (as relevant here, the "2011 Plan Unit 155 Rules" dated April, 2011, the "2009 Plan Unit 155 Rules" dated August, 2009, and the "2004 Plan Unit 155 Rules" dated February 2004).  Pursuant to these instruments, the Fund and its Trustees exercise, and have exercised, control over several facets of the Fund and the employee welfare benefit plans associated therewith, including Plan Unit 155.  The day-to-day operations of the Fund are administered by the Union Trustees, the Employer Trustees, and their delegates.

7.     The participants and beneficiaries of Plan Unit 155 were eligible employees of The Greenbrier (and their dependents) who are and have been represented by the various local unions that comprise the GCLU and SPFPA Local 405.  Plaintiffs Thelma R. Adkins, William Arnold, Dennis Austin, Greg Scott and Eric Tygrett, all residents of West Virginia, were participants in Plan Unit 155 since its inception in February 2004.  Plaintiffs William Arnold, Eric Tygrett and Dennis Austin are members of Local 863 of Workers Unite, an affiliate of Service Employees International Union Local 863 ("Workers Unite/SEIU Local 863"), which replaced UNITE HERE Local 863 in 2009 as the bargaining representative for approximately 700 of the approximately 1200 employees of The Greenbrier who are represented by the various local unions that comprise the GCLU.  Plaintiffs Thelma R. Adkins and Greg Scott are members of LIUNA Maintenance Workers' Local Union No. 11892, WV AFL-CIO ("LIUNA Local 1182"), which is the bargaining representative for approximately 380 of those approximately

1200 employees.   Between them, Workers Unite/SEIU Local 863 and LIUNA Local 1182 represent approximately 1,080 (approximately 90%) of the employees of The Greenbrier who are represented by the various local unions that comprise the GCLU.   The classes of employees who were participants and beneficiaries in Plan Unit 155, including the Participant Plaintiffs, are the same classes of employees who are participants and beneficiaries in a newly created health and welfare plan adopted by The Greenbrier (*see infra*, ¶ 48) and will benefit from a new trust that is being created by The Greenbrier. (*see infra*, ¶ 49).

## II.  <u>JURISDICTION AND VENUE</u>

8.    Jurisdiction in this Court is appropriate pursuant to 28 U.S.C. § 1331, inasmuch as this civil action implicates federal questions under ERISA, Federal Common Law and/or the LMRA.

9.    This Court also has diversity jurisdiction over any state law claims alleged herein, pursuant to 28 U.S.C. § 1332, because the state law claims alleged herein are between citizens of different states, and the amount in controversy exceeds $75,000.

10.    In addition, this Court has supplemental jurisdiction over any state law claims alleged herein, pursuant to 28 U.S.C. § 1367(a), because those state law claims are so related to the other claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

11.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to the claims alleged below occurred in this judicial district.   Furthermore, venue is proper pursuant to 29 U.S.C. § 1132(e)(2), inasmuch as the breaches complained of in this Complaint occurred within this jurisdiction.   This action is

appropriate in this division of the United States District Court for the Southern District of West Virginia pursuant to Rule 77.2 of the Local Rules of Civil Procedure.

### III.  FACTUAL ALLEGATIONS

### A.    THE INITIAL TERMS BETWEEN THE FUND AND THE GREENBRIER

12.     Plaintiffs incorporate and restate Paragraphs 1 to 11 as if fully set forth *verbatim* herein.

13.     On February 1, 2004, The Greenbrier became an "employer" in the Fund, and the applicable plan for eligible employees (and their dependents) of The Greenbrier was designated as Plan Unit 155.  This occurred as a result of negotiations, pursuant to a May 28, 2003 Memorandum of Intent between The Greenbrier and the GCLU, that culminated in a CBA (the "2004 CBA") between The Greenbrier and the GCLU effective from February 1, 2004 to January 31, 2008, later extended until July 31, 2009.  Further, the Fund accepted the 2004 CBA, allowing The Greenbrier to join in the Fund and allowing The Greenbrier's employees (and their dependents) to become participants and beneficiaries in Plan Unit 155.

14.     The 2004 CBA governed the contributions The Greenbrier made to the Fund.  The Greenbrier was to be underwritten as an independent plan unit, with only its claims utilization experience considered in calculating future rates.  The Greenbrier also was required to contribute additional funds beyond the Fund's billed rate, if necessary, to support the cost of its plan, emphasizing Plan Unit 155's independence from other plan units in the Fund.

15.     Each month, the Fund would send The Greenbrier a master invoice and a detailed invoice setting forth The Greenbrier's contributions for a particular month.  Often, The Greenbrier would not have the opportunity to audit each month's invoice before the due date.  As such, The Greenbrier was required to pay the invoice and then audit the detailed invoice for

errors, such as participant eligibility, date of termination from employment, type of coverage elected, and any other errors in the Fund's accounting.

16.     After its audit, The Greenbrier would inform the Fund if there were any errors made and credits due.  Upon information and belief, the Fund did not conduct a similar audit on a monthly basis.

17.     Accordingly, The Greenbrier acted as a fiduciary for the Fund and Plan Unit 155 in terms of utilizing its discretion to determine eligibility, proper accounting, and proper payments with respect to plan assets, inasmuch as The Greenbrier was functionally charged with ensuring that the contributions claimed by the Fund were correct, together with its other functions and duties with respect to Plan Unit 155.

18.     Furthermore, while the Fund may have deposited the relevant contributions into a common fund for all "employers" or for all of the various plan units, both The Greenbrier and the Fund can readily determine, and have in the past determined, the amount held by the Fund for the use of the participants and beneficiaries of Plan Unit 155, as well as the claims paid for those participants and beneficiaries in Plan Unit 155 and the administrative expenses chargeable for them.  Accordingly, these contributions can clearly be traced to particular funds in the Defendants' possession.

19.     The purpose of Plan Unit 155 was stated, in part, in the 2004 Plan Unit 155 Rules, Article 1: to "establish provisions which determine . . . the amount, extent, conditions, and methods of payment under the Plan of Benefits for Plan Unit 155." (2004 Plan, p. 1).

20.     The 2004 Plan Unit 155 Rules, Article 19, § 4 also provided, that the trustees had "[t]he right to decide all questions or controversies of whatever character, arising in any manner between any parties or persons in connection with the Plan or the interpretation thereof" unless

such decisions are "determined by a court of competent jurisdiction . . . to be arbitrary or capricious." (2004 Plan Unit 155 Rules, p. 116).

21.     Amendment of Plan Unit 155 was governed by the 2004 Plan Unit 155 Rules, which provided in Article 19, § 12 that the trustees could amend Plan Unit 155 "at any time and without notice . . . but [only] upon a non-discriminatory basis." (2004 Plan Unit 155 Rules, p. 118) (emphasis added).

22.     Finally, termination of Plan Unit 155 was governed by the 2004 Plan Unit 155 Rules, Article 19, § 12.  Upon the termination of the Plan Unit 155, "any excess assets remaining . . . will be used for purposes consistent with the purpose of the Plan as determined by the Trustees, or they may be transferred to another employee benefit fund providing similar benefits." (2004 Plan Unit 155 Rules, p. 119) (emphasis added).

23.     The Fund also issued a Summary Plan Description when The Greenbrier joined the Fund in 2004 (the "2004 SPD").  The 2004 SPD stated that the purpose of Plan Unit 155 was "to provide benefits to [participants] and [their] covered dependents." (2004 SPD, p. 2).  Further, the 2004 SPD explicitly stated that The Greenbrier is the entity paying for the benefits (not, for instance, all employers in the common fund). (*Id.* at p. 3).  The 2004 SPD also stated that, "[i]f there is money left over [after Plan Unit 155 is terminated and all claims submitted are paid], the Trustees may use it in a manner consistent with the purposes for which the Plan was created or they may transfer it to another fund providing similar benefits."  (2004 SPD, at p. 68) (emphasis added).

## B.     THE 2009 NEGOTIATIONS AND TERMS

24.  In 2009, The Greenbrier conducted negotiations with the GCLU resulting in a new CBA (the "2009 CBA") which was retroactive to May 6, 2009.  Under the terms of the 2009

CBA, employees of The Greenbrier (and their dependents) who were represented by the GCLU continued to be eligible to participate in Plan Unit 155.  SPFPA Local 405 also negotiated a CBA with The Greenbrier during this same timeframe, which was also retroactive to May 6, 2009.

25.     During the negotiations over the 2009 CBA, it became clear that Plan Unit 155 had excess assets of more than $3,000,000, which had been paid to the Fund through contributions by The Greenbrier (with internal contributions from its employees of 20%).  The excess assets existed notwithstanding the fact that the Fund and its Trustees set The Greenbrier's contribution rate based on the claims experience of The Greenbrier's employees (and their dependents) and the Fund used those contributions only to pay the claims for the participants and beneficiaries of Plan Unit 155 (and the reasonable administrative costs associated therewith).

26.     The 2009 CBA addressed, in part, The Greenbrier's and the GCLU's concern about what happened to be an unnecessary accumulation of excess assets through reduced contributions for The Greenbrier (and its employees) in Plan Unit 155.  The 2009 CBA was to be effective from May 6, 2009 through January 31, 2013.  Throughout the life of the 2009 CBA, The Greenbrier and its employees who participated in Plan Unit 155 continued to make their respective contributions to the Fund for the benefits provided by Plan Unit 155.

27.     The 2009 CBA also provided that the contribution rates/amounts set forth in the agreement were maximum contribution rates/amounts.  The use of language in the 2009 CBA that contributions "will not exceed" the specified rates, at least in part, was to prevent any demand by the Trustees for increased contributions (and further increasing the amount of excess assets), as well as achieving a reduction of the amount of unnecessary excess assets over the term of the 2009 CBA.  (*See* 2009 CBA, p. 30)  The 2009 CBA further provided that The Greenbrier, the GCLU and the Fund would enter into a Memorandum of Agreement through which all these

parties would be bound by and agree to "the Fund's Minimum Standards" for contributions/rates. The Greenbrier and the GCLU entered into such Memorandum of Agreement (the "2009 MOA") in June 2009, as a result of their 2009 CBA negotiations.  It is unclear whether the Fund ever signed on to the 2009 MOA, but the various Fund and Plan Unit 155 documents required the Fund to "accept" the 2009 CBA (all the CBAs) before it allowed employers to participate in the Fund, and, in fact, the Fund and its Trustees accepted the 2009 CBA and the CBA between the Greenbrier and the SPFPA Local 405, which was substantially similar.

28.    Also, under the 2009 MOA, The Greenbrier agreed to remit contributions monthly, no later than the twentieth day of each month, together with a report of the employee data required by the Fund.  The contributions were made by The Greenbrier (with internal contributions from employees of 20%), and The Greenbrier continued to act in a fiduciary capacity by, among other things, utilizing its discretion to determine eligibility, proper accounting, and proper payments with respect to plan assets, inasmuch as The Greenbrier was functionally charged with ensuring that the contributions claimed by the Fund were correct.

29.    As a result of the 2009 CBA negotiations, the Fund issued the 2009 Plan Unit 155 Rules dated August 1, 2009.  From time to time, the 2009 Plan Unit 155 Rules may have been amended by the Trustees.  The Fund also issued a Summary Plan Description for Plan Unit 155 (the "2009 SPD") effective August 2009.

30.    As in the 2004 Plan Unit 155 Rules, the stated purpose in the 2009 Plan Unit 155 Rules, Article 1, was to "establish provisions which determine . . . the amount, extent, conditions, and methods of payment under the Plan of Benefits for Plan Unit 155." (2009 Plan Unit 155 Rules, p. 1).

31.     The 2009 Plan Unit 155 Rules, Article 18, § 7, also provided that "the Trustees have the right to decide all questions and controversies of whatever character, rising in any manner between any parties or persons in connection with the Fund or Plan or the interpretation thereof . . . except . . . to the extent such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matters." (2009 Plan Unit 155 Rules, p. 126).

32.     As in the 2004 Plan Unit 155 Rules, amendment was governed by Article 19, § 11 of the 2009 Plan Unit 155 Rules, providing that the trustees could amend Plan Unit 155 "at any time and without notice . . . but [only] upon a non-discriminatory basis." (2009 Plan Unit 155 Rules, p. 129) (emphasis added).

33.     As with the 2004 Plan Unit 155 Rules, the 2009 Plan Unit 155 Rules provided in Article 18, § 11 that, upon the termination of Plan Unit 155, "any excess assets remaining . . . will be used for purposes consistent with the purpose of the Plan as determined by the Trustees, or they may be transferred to another employee benefit fund providing similar benefits." (2009 Plan Unit 155 Rules, p. 129 (emphasis added)).  Crucially, the parties also stated in the 2009 MOA that the benefits administered by the Fund are governed solely by the terms and conditions of Plan Unit 155. (2009 MOA, p. 2)

34.     Likewise, the 2009 SPD echoed the 2004 SPD, stating that the purpose of Plan Unit 155 was "to provide benefits to [participants] and [their] covered dependents" (2009 SPD, p. 2) and that The Greenbrier is the entity paying for the benefits (not, for instance, all employers in the common fund) (Id. at p. 3).  The 2009 SPD also stated that, "[i]f there is money left over [after Plan Unit 155 is terminated and all claims submitted are paid], the Trustees may use it in a manner consistent with the purposes for which the Plan was created or they may transfer it to

another fund providing similar benefits," precisely the same language as in the 2004 SPD. (2009 SPD, at p. 68) (emphasis added).

## C.    THE TRANSITION FROM HEREIU TO SEIU

35.    In March of 2009, The Greenbrier's employees in the bargaining unit heretofore represented by UNITE HERE Local 863 disaffiliated from that union and selected Workers Unite/SEIU Local 863 as their exclusive bargaining representative. At approximately the same time, certain employees selected SPFPA Local 405 as their exclusive bargaining representative. The disassociation of Workers Unite/SEIU Local 863 was part of a much larger dispute between UNITE HERE and the SEIU.   Ultimately, the SEIU, UNITE HERE and the Fund agreed, by October of 2010, that The Greenbrier could continue to participate in the Fund and that The Greenbrier's employees (and their dependents) could continue to participate in the Plan Unit 155 through January 31, 2013, but not thereafter.   The same circumstances applied to the employees represented by SPFPA Local 405.

36.    On October 6, 2010, John Wilhelm, Chairman of the Fund, Union Trustee and President of the UNITE HERE International Union, wrote to The Greenbrier and the employees who were participants in Plan Unit 155 to advise, in essence, that the SEIU and UNITE HERE had reached an "agreement" to "settle" their "long dispute," the result of which was the removal of The Greenbrier from the Fund and the termination of Plan Unit 155 effective January 31, 2013 (the date the 2009 CBA was set to expire).   As such, The Greenbrier and its employees (and their dependents) became short-timers, and their collective days in Plan Unit 155 were numbered.

37.    John Wilhelm's October 6, 2010 memo did not address, even in the slightest, the excess assets that had accumulated within Plan Unit 155, all on account of the contributions from The Greenbrier (and its employees).   Of course, all of the Plan Unit 155 documents up to this

time stated that, upon the termination of Plan Unit 155, any excess assets would be used only for purposes consistent with Plan Unit 155 or transferred to another fund providing benefits similar to those provided by Plan Unit 155.

**D.   THE UNLAWFUL CHANGES IN THE TRUST AGREEMENT AND PLAN UNIT 155 DOCUMENTS**

38.    Despite the fact that there were no new CBA negotiations between The Greenbrier and the GCLU or The Greenbrier and SPFPA Local 405 in 2011, the Trustees of the Fund adopted new "rules" (but not a new SPD) for Plan Unit 155, and they continued to make changes to those rules even thereafter.

39.    As with the 2004 and 2009 documents, the 2011 Plan Unit 155 Rules stated in Article 1 that its purpose was to "establish provisions which determine . . . the amount, extent, conditions, and methods of payment under the Plan of Benefits for Plan Unit 155." (2011 Plan Unit 155 Rules, p. 1).

40.    As with the 2009 document, the 2011 Plan Unit 155 Rules, Article 18, § 7, provided that "[t]he Trustees have the right to decide all questions or controversies of whatever character, rising in any manner between any parties or persons in connection with the Fund and the Plan or the interpretation thereof," except to the extent that each decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matters." (2011 Plan Unit 155 Rules, pp. 127–128).

41.    As with the 2004 and 2009 documents, the 2011 Plan Unit 155 Rules, Article 19, § 11, provided that the Trustees could amend Plan Unit 155 "at any time and without notice . . . but [only] upon a <u>non-discriminatory</u> basis." (2009 Plan Unit 155 Rules, p. 131) (emphasis added).

42.     After deciding to throw The Greenbrier out of the Fund and to terminate Plan Unit 155 on January 31, 2013, and knowing there were more than $4,400,000 in excess assets in Plan Unit 155 that were and had been generated by the contributions by The Greenbrier (with internal contributions from employees of 20%), the Fund and the Trustees later executed their scheme and changed the language in the 2004 and 2009 documents to state that, "if there are any excess assets remaining after the payment of all Plan [Unit 155] liabilities, those excess assets will be used for purposes consistent with the purposes of the <u>Trust Agreement</u> as determined by the Trustees, <u>including the transfer of such assets to another Plan providing similar benefits.</u>" (2011 Plan, p. 131) (emphasis added).  This amendment, however, is non-sensical and can only be interpreted as an ineffective and unlawful attempt to confiscate the excess assets from Plan Unit 155 upon its termination.

43.     Upon information and belief, the Fund and Trustees amended the 2009 Plan (with the same language having been in the 2004 Plan, and therefore having been in place since the inception of Plan Unit 155) with this language in the 2011 Plan with the principal purpose and intent to retain the beneficial use of the aforementioned excess assets, and to divert those excess assets away from the participants and beneficiaries of Plan Unit 155.  While John Wilhelm's October 6, 2010 letter to The Greenbrier and its employees advised that the long-running feud between UNITE HERE and the SEIU had been settled (by an agreement that resulted in the Fund and its Trustees deciding to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013), he had not advised them that the Fund and its Trustees were going to confiscate the excess assets of Plan Unit 155.  That message was delayed until well after the Fund and its Trustees attempted to amend the 2009 Plan Unit 155 Rules by adopting the 2011

14

Plan Unit 155 Rules and later yet attempting to change the termination language of Plan Unit 155.

44.    Despite these ineffective and unlawful attempts to confiscate the excess assets of Plan Unit 155 upon its termination, the Trustees left at least one deed undone.  While John Wilhelm, Chairman of the Fund, Union Trustee and President of the UNITE HERE International Union, had announced the deal between the SEIU, UNITE HERE and the Fund to throw The Greenbrier out of the Fund and terminate Plan Unit 155 as of January 31, 2013, the Trustees could find nothing in the Sixth Amended Trust Agreement to support their plot.  Accordingly, but well after the fact, the Trustees adopted the Seventh Amended Trust Agreement.  Among other things, the Seventh Amended Trust Agreement contained a provision never contained in any prior Trust document, which states as follows:

> Notwithstanding anything in this Trust Agreement to the contrary, if any local Union . . .  of the International Union purports to secede or disaffiliate from the International Union, regardless of whether such secession or disaffiliation actually becomes legally effective, the Trustees shall, upon a recommendation by the Union caucus, be entitled to: (a) refuse to accept the continued participation of any employer with a collective bargaining agreement with such local Union . . . ; (b) terminate the participation of those employees represented by such local Union . . . ; and (c) terminate the participation of the employees and officers of such local Union . . .  and any applicable participation agreement.  The termination shall be effective on the first day following expiration of the then existing collective bargaining agreement which provides for participation in the Fund, or such earlier time as the Trustees determine is appropriate and legally enforceable.

(Seventh Amended Trust Agreement, § 6.06, p. 17.)

45.    The Fund and the Trustees conducted themselves in this manner despite their obligations under ERISA.  Under ERISA, as well as under the operative document governing Plan Unit 155, the Fund and the Trustees were required to hold the excess assets from Plan Unit 155 for the exclusive purpose of providing benefits to the participants and beneficiaries of Plan

Unit 155 and to discharge their duties as fiduciaries for the sole and exclusive purpose of providing benefits to the participants and beneficiaries of Plan Unit 155.  Furthermore, ERISA required the Fund and the Trustees to act in accordance with the operative document governing Plan Unit 155 and to exercise the care, skill, prudence and diligence of a prudent man under similar circumstances in providing and protecting the excess assets of Plan Unit 155 for the exclusive purpose of providing benefits to the participants and beneficiaries of Plan Unit 155.

46.     In 2009, Plan Unit 155 had excess assets of more than $3,300,000.  UNITE HERE Local Union 863 elected to disaffiliate from UNITE HERE and cast its lot with the SEIU.  The Trustees, during negotiations for a new CBA in 2009, agreed to reduce The Greenbrier's contribution rate, supposedly tied to the claims experience of The Greenbrier's employees (and their dependents) in Plan Unit 155, but only so those excess assets would not accumulate as quickly and as unnecessarily as they did under the 2004 CBA.  SEIU and UNITE HERE then "settled" their long-running feud, and the Trustees, together with the Fund, decided to throw The Greenbrier out of the Fund and terminate Plan Unit 155.  Understanding full well the continuing accumulation of excess assets in Plan Unit 155, the Trustees decided to continue to charge and capture the contributions in excess of those required to pay the claims of The Greenbrier's employees (and their dependents) by "allowing" The Greenbrier to continue participating in the Fund until the end of the 2009 CBA on January 31, 2013.  During this time and knowing full well the consequences and intentions of their actions, the Trustees unlawfully changed the 2009 Plan Unit 155 Rules to confiscate the excess assets and unlawfully changed the Sixth Amended Trust Agreement, after the fact, in an attempt to legitimize their actions.

47.     Despite the scope and breadth of these efforts, the Fund and its Trustees failed to update the 2009 SPD, and the 2009 SPD remained in effect until the termination of Plan Unit

155 on January 31, 2013. The 2009 SPD (as had the 2004 SPD) contains language similar and consistent with the 2009 Plan Unit 155 Rules and contrary to the 2011 Plan Unit 155 Rules: "[i]f there is money left over [after Plan Unit 155 is terminated and all the claims submitted are paid], the Trustees may use it in a manner consistent with the purposes for which the <u>Plan</u> was created or they may transfer it to another fund providing similar benefits." (2009 SPD, at p. 68) (emphasis added).

### E.   THE GREENBRIER'S NEW TRUST AND PLAN.

48.   As a result of the termination of Plan Unit 155, and through negotiations with the GCLU and SPFPA Local 405, The Greenbrier established a new welfare benefit plan to cover, in essence, the same groups of employees (and their dependents) who had been participating in Plan Unit 155 – the same groups of employees who were to have no healthcare coverage as a result of the actions of the Fund and its Trustees. The new plan is the "Greenbrier Union Health and Welfare Plan" (the "New Greenbrier Plan"). This new plan provides similar benefits for covered employees of The Greenbrier (and their dependents) that are similar to the benefits that were provided to them by Plan Unit 155.

49.   In accordance with the 2009 Plan Unit 155 Rules (and the 2004 Plan Unit 155 Rules) and the 2009 SPD (and the 2004 SPD), and through negotiations with the GCLU and SPFPA Local 405, The Greenbrier, the GCLU and SPFPA Local 405 have agreed to a new trust—the Trust of The Greenbrier Union Health and Wellness Plan (the "New Greenbrier Trust") —expressly for the purpose of receiving the excess assets from Plan Unit 155 upon its termination. The New Greenbrier Trust is designed to fund, or assist in funding, the benefits for the participants and beneficiaries of the New Greenbrier Plan.

50.     On May 10, 2013, The Greenbrier, for itself and on behalf of the GCLU, its various local unions, SPFPA Local 405 and the employees in those various bargaining units, requested the transfer of the excess assets of Plan Unit 155 from the Fund to the New Greenbrier Trust.

51.     The Fund has failed to transfer the excess assets from Plan Unit 155 to the New Greenbrier Trust.

52.     The cynosure of this case is that Plaintiffs do not seek to have the excess assets of Plan Unit 155 used for any purpose other than the funding of benefits provided by the New Greenbrier Plan.  By failing to remit the excess assets of Plan Unit 155 to the New Greenbrier Trust for the continuing use of the Plan Unit 155 participants and beneficiaries, and entirely consistent with the Fund's right and ability to transfer those assets to another fund or plan for this very purpose, Defendants have breached their fiduciary duties to the participants and beneficiaries of Plan Unit 155 and to The Greenbrier, they have breached their Federal Common Law duties to The Greenbrier, they have breached their contractual obligations to The Greenbrier under the applicable agreements and other documents, and they otherwise have acted in a manner that violates state law.

53.     Furthermore, upon information and belief, the Fund and the Trustees are diverting the excess assets of Plan Unit 155 to fund other liabilities of other plans (which benefits members and officials of various UNITE HERE local unions and other employers who participate in the Fund—decisions made jointly by the Union Trustees and the Employer Trustees).  This scheme and these actions by the Fund and the Trustees constitute a breach of their duties under ERISA, a breach of the operative Fund and Plan documents, a breach of the Fund's contractual obligations under the LMRA, and a violation of state law.  The only lawful

disposition of the excess assets of Plan Unit 155 is to transfer them to the New Greenbrier Trust for the purpose of funding benefits for the participants and beneficiaries of the New Greenbrier Plan.

## IV.  <u>CAUSES OF ACTION</u>

### COUNT I
### (BREACH OF FIDUCIARY DUTY CLAIM –PLAN PARTICIPANTS)

54.      Plaintiffs incorporate and reallege the allegations contained in Paragraphs 1 to 53 as if fully set forth *verbatim* herein.

55.      The Fund, the Union Trustees and the Employer Trustees are fiduciaries both of the Fund and Plan Unit 155 and qualify as fiduciaries under ERISA.

56.      Thelma R. Adkins, William Arnold, Dennis Austin, Greg Scott and Eric Tygrett, the Participant Plaintiffs, were participants in Plan Unit 155 and, as such, are entitled to bring an action pursuant to 29 U.S.C. § 1132(a)(3) for injunctive and other equitable relief.

57.      Under 29 U.S.C. § 1132(a)(2), the Participant Plaintiffs were participants in Plan Unit 155 and, as such, are entitled to bring an action for violations of 29 U.S.C. § 1109 and other duties set out in ERISA to govern the actions of fiduciaries.

58.      The Defendants have breached their fiduciary duties under ERISA to the Participant Plaintiffs and to all those similarly situated (all participants and beneficiaries of Plan Unit 155) and they have failed to follow the terms of the applicable Plan Unit 155 documents in the following respects:

(a)      the Defendants have engaged in a course of action to throw The Greenbrier out of the Fund and terminate the benefits of The Greenbrier's employees (and their dependents), participants and beneficiaries of Plan Unit 155, by terminating Plan Unit 155 and diverting the excess assets of Plan Unit 155 for unlawful purposes.

(b)     the Defendants have withheld and/or diverted Plan Unit 155 assets within the Fund, which resulted from prior contributions by The Greenbrier (with internal contributions from its employees of 20%), in violation of the requirement that the assets be held for the exclusive purpose of providing benefits to the participants and beneficiaries of Plan Unit 155;

(c)     the Defendants have failed and refused to use the excess assets from Plan Unit 155 for the beneficial use of its participants and beneficiaries;

(d)     the Defendants have failed and refused to transfer the excess assets of Plan Unit 155, for the benefit of Plan Unit 155 participants and beneficiaries, to the New Greenbrier Trust for the purposes of paying claims under the New Greenbrier Plan;

(e)     the Defendants have acted contrary to and in violation of the operative and governing documents for Plan Unit 155;

(f)     the Defendants have unlawfully amended or attempted to amend the operative and governing documents for Plan Unit 155 in an effort to utilize and divert assets of Plan Unit 155 to pay claims arising under other employee welfare benefit plans under the aegis of the Fund (and thereby benefiting individuals in other welfare benefit plans who are members of UNITE HERE and employed by other employers in the Fund); and

(g)     the Defendants unlawfully failed to reduce or eliminate required contributions from The Greenbrier (and its employees) for Plan Unit 155 after deciding that they were going to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013, thereby continuing to increase the already unnecessary accumulation of excess assets they intended to improperly and unlawfully retain from Plan Unit 155 upon its termination.

59.     Each of the actions set forth above violates ERISA's statutory duties for fiduciaries, and, moreover, were done in bad faith, were arbitrary and capricious, constitute an abuse of the Defendants' discretion, were discriminatory and directly violated the express terms of the various Plan Unit 155 documents heretofore adopted by the Trustees.

60.     As a result of the Defendants' breaches of fiduciary duties and failures to follow the provisions of the operative and governing documents for Plan Unit 155, including but not limited to the 2009 Plan Unit 155 Rules and the 2009 SPD, Plan Unit 155 has been deprived of more than $4,400,000, and the participants and beneficiaries of Plan Unit 155 have been deprived of the beneficial use of more than $4,400,000 that should be transferred to the New Greenbrier Trust for the purpose of funding the New Greenbrier Plan.  The Participant Plaintiffs and all similarly situated participants and beneficiaries of Plan Unit 155, have been harmed by the unlawful diversion and use of the contributions that were made solely and exclusively for the purpose of providing them benefits.  Declaratory, injunctive, and other equitable relief is necessary to remedy the Defendants' conduct, to restore the assets of Plan Unit 155 and to cause those assets to be transferred to the New Greenbrier Trust so that they can be used for the benefit of the participants and beneficiaries of the New Greenbrier Plan.

61.     This action is brought by the Participant Plaintiffs directly for the benefit of Plan Unit 155 and indirectly for the benefit of all participants and beneficiaries of Plan Unit 155, so the excess assets of Plan Unit 155 at the time of termination can be transferred to the New Greenbrier Trust.  Any plan assets sought to be recovered in this case will not inure to The Greenbrier or any specific employee or individual but will instead be used for the benefit of the participants and beneficiaries of Plan Unit 155 via the New Greenbrier Plan and the New Greenbrier Trust, in accordance with the operative and governing documents of Plan Unit 155.

62.     The Participant Plaintiffs, Thelma R. Adkins, William Arnold, Dennis Austin, Greg Scott and Eric Tygrett, pray for the following relief:

(a)     an accounting to determine the amount of excess assets remaining in Plan Unit 155 after payment of all covered claims submitted on or before January 31, 2013 and the reasonable administrative expenses associated therewith;

(b)     a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets remaining in Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust;

(c)     an order requiring the Defendants to restore the assets to Plan Unit 155 as of January 31, 2013 and further requiring the Defendants to transfer the excess assets of Plan Unit 155 to the New Greenbrier Trust;

(d)     reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and the costs of bringing this action; and

(e)     such other equitable relief as is just and proper.

## COUNT II
## (BREACH OF FIDUCIARY DUTY CLAIM – THE GREENBRIER)

63.     Plaintiffs incorporate and restate Paragraphs 1 to 62 as if fully set forth *verbatim* herein.

64.     The Fund, the Union Trustees, and the Employer Trustees are fiduciaries of both the Fund and Plan Unit 155 and qualify as fiduciaries under ERISA.

65.     The Greenbrier was a fiduciary with respect to the Fund and Plan Unit 155 because The Greenbrier had discretionary control of Plan Unit 155 assets, to the extent that The Greenbrier made determinations regarding the eligibility of employees, auditing of contributions

to the Fund, the amount of contributions to the Fund and payment of contributions to the Fund, together with its other functions and duties with respect to Plan Unit 155.

66.     As a fiduciary, the Greenbrier is authorized to bring this action against the Defendants under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3).

67.     The Defendants have breached their fiduciary duties under ERISA in violation of 29 U.S.C. § 1009, together with the other sections of ERISA detailing such duties, and have failed to follow the terms of the applicable Plan Unit 155 documents in the following respects:

(a)     the Defendants have engaged in a course of action to throw The Greenbrier out of the Fund and terminate the benefits of The Greenbrier's employees (and their dependents), participants and beneficiaries of Plan Unit 155, by terminating Plan Unit 155 and diverting the excess assets of Plan Unit 155 for unlawful purposes.

(b)     the Defendants have withheld and/or diverted Plan Unit 155 assets within the Fund, which resulted from prior contributions by The Greenbrier (with internal contributions from its employees of 20%), in violation of the requirement that the assets be held for the exclusive purpose of providing benefits to the participants and beneficiaries of Plan Unit 155;

(c)     the Defendants have failed and refused to use the excess assets from Plan Unit 155 for the beneficial use of its participants and beneficiaries;

(d)     the Defendants have failed and refused to transfer the excess assets of Plan Unit 155, for the benefit of Plan Unit 155 participants and beneficiaries, to the New Greenbrier Trust for the purposes of paying claims under the New Greenbrier Plan;

(e)     the Defendants have acted contrary to and in violation of the operative and governing documents for Plan Unit 155;

(f)     the Defendants have unlawfully amended or attempted to amend the operative and governing documents for Plan Unit 155 in an effort to utilize and divert assets of Plan Unit 155 to pay claims arising under other employee welfare benefit plans under the aegis of the Fund (and thereby benefiting individuals in other welfare benefit plans who are members of UNITE HERE and employed by other employers in the Fund); and

(g)     the Defendants unlawfully failed to reduce or eliminate required contributions from The Greenbrier (and its employees) for Plan Unit 155 after deciding that they were going to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013, thereby continuing to increase the already unnecessary accumulation of excess assets they intended to improperly and unlawfully retain from Plan Unit 155 upon its termination.

68.     Each of the actions set forth above violates ERISA's statutory duties for fiduciaries, and, moreover, were done in bad faith, were arbitrary and capricious, constitute an abuse of the Defendants' discretion, were discriminatory and violated the express terms of various Plan Unit 155 documents heretofore adopted by the Trustees.

69.     As a result of the Defendants' breaches of fiduciary duties and failures to follow the provisions of the operative and governing documents for Plan Unit 155, including but not limited to the 2009 Plan Unit 155 Rules and the 2009 SPD, Plan Unit 155 has been deprived of more than $4,400,000, and the participants and beneficiaries of Plan Unit 155 have been deprived of the beneficial use of more than $4,400,000 that should be transferred to the New Greenbrier Trust for the purpose of funding the New Greenbrier Plan.  The Greenbrier has been harmed by the unlawful diversion and use of the contributions that were made solely and exclusively for the purpose of providing benefits to the participants and beneficiaries of Plan

Unit 155. Declaratory, injunctive and other equitable relief is necessary to remedy the Defendants' conduct, to restore the assets of Plan Unit 155 and to cause those assets to be transferred to the New Greenbrier Trust so that they can be used for the benefit of the participants and beneficiaries of the New Greenbrier Plan.

70.    This action is brought by The Greenbrier directly for the benefit of Plan Unit 155 and indirectly for the benefit of all participants and beneficiaries of Plan Unit 155, so the excess assets of Plan Unit 155 at the time of termination can be transferred to the New Greenbrier Trust. Any plan assets sought to be recovered in this case will not inure to The Greenbrier or any specific employee or individual but will instead be used for the benefit of the participants and beneficiaries of Plan Unit 155 via the New Greenbrier Plan and the New Greenbrier Trust, in accordance with the operative and governing documents of Plan Unit 155.

71.    The Greenbrier prays for the following relief:

(a)    an accounting to determine the amount of excess assets remaining in Plan Unit 155 after payment of all covered claims submitted on or before January 31, 2013 and the reasonable administrative expenses associated therewith;

(b)    a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets remaining in Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust;

(c)    an order requiring the Defendants to restore the assets to Plan Unit 155 as of January 31, 2013 and further requiring the Defendants to transfer the excess assets of Plan Unit 155 to the New Greenbrier Trust;

(d)     reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and the costs of bringing this action; and

(e)     such other equitable relief as is just and proper.

## COUNT III
## (FEDERAL COMMON LAW CLAIM FOR RESTITUTION – THE GREENBRIER)

72.     Plaintiffs incorporate and restate Paragraphs 1 to 71 as if fully set forth *verbatim* herein.

73.     In the alternative, The Greenbrier, in its capacity as an employer, is entitled to bring a cause of action for appropriate equitable relief under the Federal Common Law of ERISA to ensure that excess contributions (now excess assets) paid to the Fund for Plan Unit 155 (contributions less payments for claims submitted on or before January 31, 2013 and reasonable administrative expenses associated therewith) are held and used for the agreed purposes—the beneficial use of Plan Unit 155 participants and beneficiaries.

74.     After embarking upon its scheme to throw Plan Unit 155 out of the Fund and terminate Plan Unit 155, the Defendants took certain steps to attempt to ensure that that they would unlawfully retain excess assets attributable to The Greenbrier (and its employees), including, but not limited to, (1) failing to reduce or eliminate The Greenbrier's required contributions, which resulted in the further accumulation of excess assets, (2) amending or attempting to amend plan documents to effectuate the Defendants' unlawful retention of the excess assets of Plan Unit 155, and (3) refusing to return excess assets attributable to The Greenbrier (and its employees) upon demand, and diverting said excess assets to the Defendants' own use.  These acts, together with the totality of the Defendants' actions described herein, were done with the express purpose of wrongfully withholding excess assets of Plan Unit 155 upon its termination and, therefore, preventing those excess assets form being transferred to another trust

or plan providing benefits similar to those provided to the participants and beneficiaries of Plan Unit 155.

75.     It is inequitable for the Fund to divert such monies away from Plan Unit 155 and withhold the use of such monies for the benefit of The Greenbrier's employees (and their dependents).  The contributions from The Greenbrier (and its employees) were made to fund liabilities that would arise as a result of qualifying events pursuant to Plan Unit 155 and to provide benefits to the participants and beneficiaries of Plan Unit 155, and the excess contributions should remain available for their exclusive and intended purpose.

76.     Any transfer of excess assets by the Fund to the New Greenbrier Trust will not inure to the benefit of The Greenbrier or any specific employee or individual; but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) covered by Plan Unit 155.

77.     The purposes of ERISA will be furthered by this claim for equitable relief because this action relates to Plan Unit 155 assets, which stand at the heart of any benefit plan, and will not otherwise disturb the policies of ERISA.

78.     Accordingly, under the Federal Common Law of ERISA, including the principle of equitable relief generally, the Defendants should be ordered to render an accounting of all Plan Unit 155 assets, after paying all claims submitted on or before January 31, 2013 and making deductions for reasonable administrative expenses associated therewith, and transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust for the purpose of funding benefits under the New Greenbrier Plan.  Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries

of Plan Unit 155 and, therefore, the assets remaining in Plan Unit 155 as of January 31, 2013 must be transferred to the Greenbrier Trust.   Finally, The Greenbrier should be awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

## COUNT IV
## (VIOLATIONS OF THE LRMA – THE GREENBRIER)

79.     Plaintiffs incorporate and restate Paragraphs 1 to 78 as if fully set forth *verbatim* herein.

80.     As set forth above, The Greenbrier is a party to agreements and other documents between an employer and a labor organization relative to the Fund and Plan Unit 155 within the meaning of 29 U.S.C. §185(a).

81.     Pursuant to the terms of the CBAs between The Greenbrier and the GCLU and The Greenbrier and SPFPA Local 405, the 2009 MOA between The Greenbrier and the GCLU, and the express terms of the various Trust and Plan Unit 155 documents themselves, The Greenbrier was bound to make contributions to the Fund, based solely on the claims experience of participants and beneficiaries in Plan Unit 155, in order to pay for medical benefits provided by Plan Unit 155 for its participants and beneficiaries.   Pursuant to these agreements and other documents and the practices attendant thereto, the Defendants accepted these contributions and further obligated the Fund to provide medical benefits through Plan Unit 155 to its participants and beneficiaries.

82.     Under the terms of these agreements and other documents and the practices attendant thereto, the Union Trustees and the Employer Trustees obligated the Fund, among other things:

(a)     To use the contributions of The Greenbrier (with internal contributions by employees of 20%) to pay claims for the participants and beneficiaries of Plan Unit 155 and reasonable administrative expenses associated therewith; and

(b)     To use the excess assets of Plan Unit 155, upon termination of Plan Unit 155, for the exclusive and beneficial use of its participants and beneficiaries and to transfer any excess assets from Plan Unit 155 to a new plan or trust established to provide the same or similar benefits as were being provided by and through Plan Unit 155.

83.     Further, under the terms of these agreements and other documents and the practices attendant thereto, the Union Trustees and the Employer Trustees obligated themselves and the Fund, among other things:

(a)     To act as fiduciaries of the Fund and, more particularly, Plan Unit 155; and

(b)     To avoid or refrain from making decisions and acting in bad faith, in an arbitrary and capricious manner, in a discriminatory manner, and otherwise violating the terms of the various Plan Unit 155 documents heretofore adopted by the Trustees.

84.     The Greenbrier fully performed its duties and obligations under these agreements and other documents and the practices attendant thereto, making all necessary contributions for Plan Unit 155.  As a result, the Fund currently possesses approximately $4,400,000 in excess assets in Plan Unit 155 from contributions by The Greenbrier for the benefit of its employees (and their dependents).

85.     The Defendants have breached their duties and obligations under the agreements and other documents and the practices attendant thereto in the following respects:

(a)     failing and refusing to act in accordance with the operative and governing Plan Unit 155 documents to use the excess assets of Plan Unit 155 for the exclusive and beneficial use of Plan Unit 155 participants and beneficiaries, and to transfer those excess assets to the New Greenbrier Trust to fund or assist in funding benefits through the New Greenbrier Plan for the same classes of employees (and their dependents) who were and have been participants and beneficiaries in Plan Unit 155;

(b)     acting in bad faith, acting in an arbitrary and capricious manner, acting in a discriminatory manner, and otherwise violating the express terms of the various Plan Unit 155 documents heretofore adopted by the Trustees;

(c)     after deciding to throw The Greenbrier out of the Fund and terminate Plan Unit 155 as of January 31, 2013, all the while continuing to charge and accept contributions from The Greenbrier that were set and kept at levels to unnecessarily and unlawfully develop excess assets in Plan Unit 155, amending or attempting to amend the Plan Unit 155 documents to allow the Fund and the Trustees to confiscate and direct the excess assets of Plan Unit 155, upon its termination, for the benefit of employers and employees of other plans within the Fund and to fail and refuse to transfer those excess assets of Plan Unit 155 to the New Greenbrier Trust; and

(d)     failing to reduce or eliminate required contributions by The Greenbrier (and its employees) in a continuing effort to unnecessarily and unlawfully accumulate excess assets in Plan Unit 155 after determining to throw The Greenbrier out of the Fund and terminate Plan Unit 155.

86.     As a result, The Greenbrier, as well as its employees (and their dependents) who were participants and beneficiaries of Plan Unit 155, has suffered injury and irreparable harm as a direct and proximate cause, and in a clearly foreseeable manner, from these breaches by the

Defendants, including but not limited to the effective loss of its (and their) contributions to the Fund that were made only for the purpose of providing medical benefits to Plan Unit 155 participants and beneficiaries, unless Defendants are ordered to account for the assets remaining in Plan Unit 155 at the time of termination and transfer those excess assets to the New Greenbrier Trust.

87.     Accordingly, the Defendants should be ordered to render an accounting of all excess assets of Plan Unit 155, after paying all covered claims submitted by January 31, 2013 and reasonable administrative expenses associated therewith, and to transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust so that those monies can be used to provide benefits to the participants and beneficiaries of the New Greenbrier Plan.  Any transfer of overpayments by the Fund will not inure to the benefit of The Greenbrier or any specific employee or individual, but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) previously covered by Plan Unit 155.  Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets of Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust.  Finally, The Greenbrier should be awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

## COUNT V
## (STATE LAW CLAIM FOR BREACH OF CONTRACT – THE GREENBRIER)

88.     Plaintiffs incorporate and restate Paragraphs 1 to 87 as if fully set forth *verbatim* herein.

89.     In the alternative, The Greenbrier is a party to agreements and other documents relative to the Fund and Plan Unit 155.

90.     Pursuant to the terms of those agreements and other documents and the practices attendant thereto, The Greenbrier made contributions to the Fund in order to pay for medical benefits provided by Plan Unit 155 for its participants and beneficiaries.  Pursuant to these agreements and other documents and the practices attendant thereto, the Defendants accepted these contributions and further obligated the Fund to provide medical benefits through Plan Unit 155 to its participants and beneficiaries.

91.     Under the terms of these agreements and other documents and the practices attendant thereto, the Union Trustees and the Employer Trustees obligated the Fund and Plan Unit 155, among other things:

(a)     To use the contributions of The Greenbrier (with internal contributions of employees of 20%) to pay claims for the participants and beneficiaries of Plan Unit 155 and reasonable administrative expenses associated therewith; and

(b)     To use the excess assets of Plan Unit 155, upon termination of Plan Unit 155, for the exclusive and beneficial use of its participants and beneficiaries and to transfer any excess assets from Plan Unit 155 to a new plan or trust established to provide the same or similar benefits as were being provided by and through Plan Unit 155.

92.    Further, under the terms of these agreements and other documents and the practices attendant thereto, the Union Trustees and the Employer Trustees obligated themselves and the Fund, among other things:

(a)    To act as fiduciaries of the Fund and, more particularly, Plan Unit 155; and

(b)    To avoid or refrain from making decisions and acting in bad faith, in an arbitrary and capricious manner, in a discriminatory manner and otherwise violating the terms of the various Plan Unit 155 documents heretofore adopted by the Trustees.

93.    The Greenbrier fully performed its duties and obligations under these agreements and other documents and the practices attendant thereto, making all necessary contributions for Plan Unit 155.  As a result, the Fund currently possesses approximately $4,400,000 in excess assets in Plan Unit 155 from contributions by The Greenbrier for the benefit of its employees (and their dependents).

94.    Defendants have breached their duties and obligations under these agreements and other documents and the practices attendant thereto in the following respects:

(a)    failing and refusing to act in accordance with the operative and governing Plan Unit 155 documents to use the excess assets of Plan Unit 155 for the exclusive and beneficial use of Plan Unit 155 participants and beneficiaries, and to transfer those excess assets to the New Greenbrier Trust to fund or assist in funding benefits through the New Greenbrier Plan for the same classes of employees (and their dependents) who were and have been participants and beneficiaries in Plan Unit 155;

(b)      acting in bad faith, acting in an arbitrary and capricious manner, acting in a discriminatory manner, and otherwise violating the express terms of the various Plan Unit 155 documents heretofore adopted by the Trustees;

(c)      after deciding to throw The Greenbrier out of the Fund and terminate Plan Unit 155 as of January 31, 2013, all the while continuing to charge and accept contributions from The Greenbrier that were set and kept at levels to unnecessarily and unlawfully develop excess assets in Plan Unit 155, amending or attempting to amend the Plan Unit 155 documents to allow the Fund and the Trustees to confiscate and direct the excess assets of Plan Unit 155, upon its termination, for the benefit of employers and employees of other plans within the Fund and to fail and refuse to transfer those excess assets of Plan Unit 155 to the New Greenbrier Trust; and

(d)      failing to reduce or eliminate required contributions by The Greenbrier (and its employees) in a continuing effort to unnecessarily and unlawfully accumulate excess assets in Plan Unit 155 after determining to throw The Greenbrier out of the Fund and terminate Plan Unit 155.

95.      As a result, The Greenbrier, as well as its employees (and their dependents) who were participants and beneficiaries of Plan Unit 155, has suffered injury and irreparable harm as a direct and proximate cause, and in a clearly foreseeable manner, from these breaches by the Defendants, including but not limited to the effective loss of its (and their) contributions to the Fund that were made only for the purpose of providing medical benefits to Plan Unit 155 participants and beneficiaries, unless the Defendants are ordered to account for the assets remaining in Plan Unit 155 at the time of termination and transfer those excess assets to the New Greenbrier Trust.

96.     Accordingly, the Defendants should be ordered to render an accounting of all excess assets of Plan Unit 155, after paying all covered claims submitted by January 31, 2013 and reasonable administrative expenses associated therewith, and to transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust so that those monies can be used to provide benefits to the participants and beneficiaries of the New Greenbrier Plan.  Any transfer of overpayments by the Fund will not inure to the benefit of The Greenbrier or any specific employee or individual, but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) previously covered by Plan Unit 155.  Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets of Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust.  Finally, The Greenbrier should be awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

## COUNT VI
## (STATE LAW CLAIM FOR UNJUST ENRICHMENT – THE GREENBRIER)

97.     Plaintiffs incorporate and restate Paragraphs 1 to 96 as if fully set forth *verbatim* herein.

98.     In the alternative, and in its capacity as an employer involved with the Fund, The Greenbrier, on its own behalf and on behalf of its employees, made contributions to the Fund for the purpose of providing benefits for its employees (and their dependents) through Plan Unit 155.  Those contributions were based, or were supposed to be based, solely on the claims

experience of the participants and beneficiaries of Plan Unit 155 (and reasonable administrative expenses associated therewith), and, in any event, any assets remaining in Plan Unit 155 at the time of its termination were supposed to be used for the sole and exclusive purpose of continuing to provide benefits to the participants and beneficiaries of Plan Unit 155.

99.     The contributions made by The Greenbrier far exceeded the claims incurred by its employees (and their dependents) and the reasonable administrative expenses associated therewith.  Based on The Greenbrier's contributions, there existed, upon termination of Plan Unit 155 by the Defendants, excess assets believed to be more than $4,400,000.   These contributions—excess contributions—constitute a benefit conferred upon the Fund, with the knowledge of its Trustees, by The Greenbrier, to the detriment of The Greenbrier.

100.     The Greenbrier made these contributions to the Fund for the sole purpose of securing benefits for its employees and their dependents under Plan Unit 155, and those contributions, less the costs of claims and reasonable administrative expenses associated therewith, were to be used for that exclusive purpose.

101.     Once the Defendants determined to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013, the Defendants failed to reduce or eliminate the unnecessary accumulation of plan assets and continued to charge excessive contribution rates for The Greenbrier (and its employees) and further acted unlawfully to confiscate the excess assets of Plan Unit 155 upon its termination.

102.     The Defendants now withhold these excess contributions—unlawfully—for the purpose of preventing participants and beneficiaries of Plan Unit 155 from enjoying those benefits and to deprive The Greenbrier of the value of its contributions.  Allowing the Fund to

retain these contributions violates the fundamental principles of justice, equity and good conscience.

103.    Upon the termination of Plan Unit 155, the Trustees had no right to use or divert excess assets from Plan Unit 155 (amounting to more than $4,400,000) for the benefit of other employers or employees in the Fund, and in fact, such use or direction unjustly enriches the Fund and others in a manner and to an extent which they are not entitled.

104.    Accordingly, the Defendants should be ordered to render an accounting of all excess assets of Plan Unit 155, after paying all covered claims submitted by January 31, 2013 and reasonable administrative expenses associated therewith, and to transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust so that those monies can be used to provide benefits to the participants and beneficiaries of the New Greenbrier Plan.  Any transfer of overpayments by the Fund will not inure to the benefit of The Greenbrier or any specific employee or individual, but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) previously covered by Plan Unit 155.  Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets of Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust.  Finally, The Greenbrier should be awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

## COUNT VII
## (STATE LAW CLAIM FOR MONEY HAD AND RECEIVED – THE GREENBRIER)

105.    Plaintiffs incorporate and restate Paragraphs 1 to 104 as if fully set forth *verbatim* herein.

106.    In the alternative, The Greenbrier, as an employer participating in the Fund, made contributions to the Fund on its own behalf and on behalf of its employees for the purpose of providing benefits for its employees (and their dependents) through Plan Unit 155.  Those contributions were based, or were supposed to be based, solely on the claims experience of the participants and beneficiaries of Plan Unit 155 (and reasonable administrative expenses associated therewith).  Based on contribution rates set by the Defendants, the Fund has received approximately $4,400,000 in excess contributions from The Greenbrier, and the operative and governing documents under which those monies were contributed provided that, upon termination of Plan Unit 155, any excess assets would be used for the benefit of the participants and beneficiaries of Plan Unit 155, including the transfer of such excess assets to another plan or trust providing similar benefits.

107.    After members of UNITE HERE Local Union 863 elected to disaffiliate with UNITE HERE, the Trustees determined to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013, and then the Trustees unlawfully attempted to amend the Plan Unit 155 documents to allow them to divert the excess assets of Plan Unit 155 to other improper and unlawful uses.  Plan Unit 155 was then terminated by the Defendants, and the Defendants have failed and refused to transfer the approximately $4,400,000 in excess assets to the New Greenbrier Trust, which was established for the very purpose of receiving these excess assets.  In turn, The Greenbrier's employees (and their dependents), the participants and

beneficiaries of Plan Unit 155, have been deprived of the beneficial use of the excess assets The Greenbrier (and they) paid for and rightfully anticipated.

108.     Further, after determining to throw The Greenbrier out of the Fund and terminate Plan Unit 155 effective January 31, 2013, the Defendants failed to reduce or eliminate the accumulation of unnecessary plan assets and continued to charge excessive contribution rates for The Greenbrier (and its employees) and further acted unlawfully to confiscate the excess assets of Plan Unit 155 upon its termination.

109.     Therefore, the Defendants hold approximately $4,400,000 of excess assets, and such amount must be transferred, in accordance with the operative and governing Plan Unit 155 documents, to the New Greenbrier Trust.

110.     Accordingly, the Defendants should be ordered to render an accounting of all excess assets of Plan Unit 155, after paying all covered claims submitted by January 31, 2013 and reasonable administrative expenses associated therewith, and to transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust so that those monies can be used to provide benefits to the participants and beneficiaries of the New Greenbrier Plan.  Any transfer of overpayments by the Fund will not inure to the benefit of The Greenbrier or any specific employee or individual, but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) previously covered by Plan Unit 155.  Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 and for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets of Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust.  Finally, The Greenbrier should be

awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

**WHEREFORE**, Greenbrier Hotel Corporation d/b/a The Greenbrier and the Participant Plaintiffs, Thelma R. Adkins, William Arnold, Dennis Austin, Greg Scott and Eric Tygrett, respectfully pray that this Court enter judgment in their favor, and award the relief requested above, together with such other and further equitable relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED.

> **GREENBRIER HOTEL CORPORATION d/b/a THE GREENBRIER, and THELMA R. ADKINS, WILLIAM ARNOLD, DENNIS AUSTIN, GREG SCOTT and ERIC TYGRETT**
> **BY:   SPILMAN THOMAS & BATTLE, PLLC**
>
> _____/s/ Samuel M. Brock III_____
> Samuel M. Brock III (WV State Bar No. 9216)
> Grant P. H. Shuman (WV State Bar No. 8856)
> David A. Bosak (WV State Bar No. 11947)
> 300 Kanawha Boulevard, East (Zip 25301)
> PO Box 273
> Charleston, WV 25321-0273
> 304.340.3800 (telephone)
> 304.340.3801 (facsimile)
> sbrock@spilmanlaw.com
> gshuman@spilmanlaw.com
> dbosak@spilmanlaw.com