**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **GREENBRIER HOTEL CORPORATION,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:13-11644** |
| **UNITE HERE HEALTH,** *et al.*, | ) ) ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court is Plaintiffs' Motion to Compel (Document No. 54.), filed on March 24, 2014. Defendants filed their Response to Plaintiffs' Motion to Compel on April 17, 2014 (Document No. 62.), to which Plaintiffs filed their Reply on April 28, 2014. (Document No. 65.)

**<u>BACKGROUND</u>**

Plaintiffs filed their Complaint in this District Court on May 17, 2013. (Document No. 1.) Plaintiffs allege that they are entitled to excess contributions made to Plan 155, which Defendant UNITE HERE HEALTH refuses to remit.

UNITE HERE, a labor union created in 2004, established a multi-employer trust, UNITE HERE HEALTH ("the Fund") pursuant to Section 302(c)(5) of the Labor Management Relations Act § 186(c)(5), and administered in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"). (Document No. 1 ("Complaint") at ¶ 2.) The Fund was established to provide funding for health and welfare benefits for eligible employees of employers who entered into collective bargaining agreements or participation agreements, by which the employers agreed to make periodic contributions to the Fund. (<u>Id.</u>) Defendant The Greenbrier participated in the Fund.

(Id.) The plan unit for The Greenbrier and its eligible employees was H.E.R.E.I.U. - Plan Unit 155 ("Plan Unit 155"). The Trustees of the Fund and Plan Unit 155 accepted contributions from The Greenbrier and its employees. (Id. ¶ 3.) Plan Unit 155 is a separate entity from the Fund. (Id.) Plan Unit 155 is a welfare benefit plan within the meaning of ERISA, whereas the Fund acts primarily as a funding vehicle for Plan Unit 155. (Id.)

Defendants John W. Wilhelm, Geoconda Arguello-Kline, William Biggerstaff, Donna DeCaprio, Maya DeHart, Bill Granfield, Terry Greenwalk, Comstance M. Holt, Karen Kent, Clete Kiley, C. Robert McDevitt, Leonard O'Neill, Henry Tamarin, Donald Taylor, and Thomas Walsh serve as the Union Trustees respecting the management and administration of the Fund and Plan Unit 155, and are fiduciaries under ERISA. (Id. at 4.) Defendants Paul Ades, James M. Anderson, Richard M. Betty, Albert I. Church, James L. Claus, Richard Ellis, George Greene, Arnold F. Karr, Cynthia Kiser Murphy, Russ Mclaragni, Frank Muscolina, William Noonan, Jack M. Penman, John Socha, Harold Taegel, Gary Wang, and George Wright serve as the Employer Trustees respecting the management and administration of the Fund and Plan Unit 155, and are fiduciaries under ERISA. (Id. at ¶ 5.) The Fund and Plan Unit 155 is governed during relevant times under the terms of the Seventh Amended and Restated Agreement and Declaration of Trust, adopted October 18, 2012, and the Sixth Amended and Restated Agreement and Declaration of Trust, adopted March 6, 2003. (Id. at 6.)

In March 2009, The Greenbrier's employees represented by UNITE HERE Local 863, disaffiliated from that union and selected Workers Unite/SEIU Local 863 as their exclusive bargaining representative. (Id. at ¶ 35.) The SEIU, UNITE HERE, and the Fund agreed that by October 2010, The Greenbrier and its employees could continue to participate in the Fund and Plan

Unit 155, through January 31, 2013. (Id.) Pursuant to a letter dated October 6, 2010, Defendant John

Wilhelm, Chairman of the Fund, Union Trustee, and President of the UNITE HERE International

Union, advised The Greenbrier that the SEIU and UNITE HERE had reached an agreement, which

resulted in the removal of The Greenbrier from the Fund and termination of Plan Unit 155, effective

January 31, 2013. (Id. at ¶ 36.) The letter, however, failed to address The Greenbrier's excess

contributions, which exceeded $4,400,000. (Id. at ¶¶ 36, 42.) Plaintiffs maintain that under ERISA,

the Fund and the Trustees were required to hold the excess contributions for the sole purpose of

providing benefits to the participants and beneficiaries of Plan Unit 155. (Id. at ¶ 45.) Thus, in 2009,

UNITE HERE Local Union 863 disaffiliated from UNITE HERE and joined with the SEIU. (Id. at

¶ 46.) At that time, the Trustees agreed to reduce The Greenbrier's contribution rate so the excess

assets would not accumulate as quickly and unnecessarily as they had. (Id.) The SEIU and UNITE

HERE then threw The Greenbrier out of the Fund and terminated Plan Unit 155, effective January

31, 2013, so as to continue to charge and capture the excess contributions. (Id.) Nevertheless, the

Trustees changed the 2009 Plan Unit 155 Rules and confiscated the excess assets and changed the

Sixth Amended Trust Agreement after the fact in an attempt to legitimize their actions. (Id.) The

New Greenbrier Trust was established for the receipt of the excess assets from Plan Unit 155. (Id.

at ¶ 49.) The Greenbrier requested that the Fund transfer the excess assets on May 10, 2013, which

it failed to do. (Id. at ¶¶ 50-51.)

   Plaintiffs allege in Counts One and Two that the Union Trustees and the Employer Trustees

breached their duties under ERISA to the Participant Plaintiffs and to The Greenbrier. (Id. at ¶¶ 54-

62, 63-71.) Counts Three through Seven alleged (III) federal common law claim for restitution, (IV)

violations of the LRMA, (V) state law claim for breach of contract, (VI) state law claim for unjust

enrichment, and (VII) state law claim for money had and received. (Id. at 72-109.) Plaintiffs seek the following relief:

> [A]n accounting of all excess assets of Plan Unit 155, after paying all covered claims submitted by January 31, 2013 and reasonable administrative expenses associated therewith, and to transfer all remaining excess assets of Plan Unit 155 to the New Greenbrier Trust so that those monies can be used to provide benefits to the participants and beneficiaries of the New Greenbrier Plan. Any transfer of overpayments by the Fund will not inure to the benefit of The Greenbrier or any specific employee or individual, but rather, it will be used to fund the benefits being provided by the New Greenbrier Plan to pay claims incurred by the same classes of its employees (and their dependents) previously covered by Plan Unit 155. Further, The Greenbrier requests that this Court issue a declaratory judgment that the assets of Plan Unit 155 must be used only for the purposes consistent with Plan Unit 155 for the exclusive benefit of the participants and beneficiaries of Plan Unit 155 and, therefore, that the assets of Plan Unit 155 as of January 31, 2013 must be transferred to the New Greenbrier Trust. Finally, The Greenbrier should be awarded its reasonable attorneys' fees, reasonable expenses, pre-judgment and post-judgment interest, and costs of bringing this action, together with such other equitable relief as is just and proper.

(Id. at 110.)

By Memorandum Opinion and Order entered December 19, 2013, District Judge Berger granted in part Defendants' Motion to Dismiss and dismissed Counts three though seven of Plaintiffs' Complaint. (Document No. 35.) Thus, only the two claims of breach of fiduciary duty remain. (Id.)

On March 24, 2014, Plaintiffs filed their Motion to Compel and Memorandum of Law in Support. (Document Nos. 54-55.) Defendants filed their Response on April 17, 2014. (Document No. 62.) Plaintiffs filed their Reply on April 28, 2014. (Document No. 65.)

## ANALYSIS

Rule 37 of the Federal Rules of Civil Procedure provides that if a party fails to answer an interrogatory or produce a document, the discovering party may move for an Order compelling the

answer. <u>See</u> Fed. R. Civ. P. 37(a)(3)(B). Additionally, the Rule requires a certification "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Rule 37 also provides that when a Motion to Compel is granted, the court "*must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay to the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the nondisclosure was substantially justified or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(A) (Emphasis added).

Plaintiffs served Defendants their First Set of Interrogatories and Requests for Production of Documents to All Defendants on November 22, 2013.[1] (Document No. 27.) Defendants notified Plaintiffs of a typographical error, and Plaintiffs served Defendants their Amended First Set of Interrogatories and Requests for Production of Documents to All Defendants on December 18, 2013. (Document No. 33.) The parties filed a Stipulation of Time and Procedure to Respond to Discovery Requests on December 18, 2013. (Document No. 34.) The Stipulation provided that the Fund and Plan Unit 155 were to respond to Plaintiffs' Amended Discovery on or before January 17, 2013, and that the Trustees were to respond to Plaintiff's Amended Discovery on or before January 31, 2014. (<u>Id.</u>) The Stipulation further set forth a February 17, 2014, deadline for Plaintiffs to file a Motion to Compel, with any deficient response due by Defendants on or before March 3, 2014. (<u>Id.</u>) On January 17, 2014, the Fund served its Objections and the Fund's Answers to Plaintiffs' Amended

---

[1] Defendants note that Plaintiffs initially directed their discovery requests to non-party Peter Bostic, rather than to any named Defendant. (Document No. 62 at 5.) Counsel worked together and allowed Plaintiffs to serve their amended discovery requests on Defendants and agreed that the requests would be considered served as of December 18, 2013. (*Id.*)

First Set of Interrogatories and Defendants' Objections and the Fund's [sic] to Plaintiffs' Requests for Production of Documents. (Document No. 54 at ¶ 4.) Plaintiffs found the Fund's Responses to be deficient and sent a letter to counsel detailing the nature of the deficiencies on January 27, 2014. (Document No. 54, Exhibit E.) The parties held telephonic conferences on February 3, 4, and 6, 2014, which lasted approximately five hours. (Document No. 54 at ¶ 5.) As a result of the conferences, the parties filed a further Stipulation on February 17, 2014, setting forth a deadline of March 24, 2014, for Plaintiffs to file a motion to compel. (Document No. 49.) On February 8, 2014, Plaintiffs revised two additional document requests in their Amended Requests. (Document No. 54 at Exhibit F.) On February 21, 2014, Defendants served Defendants' Supplemental Objections and the Fund's Supplemental Responses to Plaintiffs' Amended Requests for Production of Documents and UNITE HERE HEALTH'S Supplemental Response to Plaintiffs' Amended First Set of Interrogatories. (Document No. 54 at ¶ 8 and Exhibits G and H.)

Plaintiffs' counsel sent a further letter dated March 10, 2014, advising of deficient responses. (Document No. 54 at ¶ 9 and Exhibit I.) Defendants' counsel sent a letter to Plaintiffs' counsel, dated March 14, 2014, in response to Plaintiffs' letter. (Document No. 54 , Exhibit J.) Plaintiffs assert that Defendants have begun producing documents and have produced pdf files, which contain hundreds of documents in each file. (Document No. 54 at ¶ 11.) Defendants also produced an index that purports to show a Bates Number Range and a custodian, which contains a beginning and ending page number for each document within the pdf file. (Id.)

In their Motion to Compel, Plaintiffs assert that the Fund, in its Supplemental Answers and Responses, has relied on general objections, boilerplate objections, objections that the discovery requests are "overly broad and unduly burdensome" or "vague and ambiguous," and irrelevancy

6

objections, which Plaintiffs allege are inappropriate. (Document No. 54 at ¶¶ 13-17.) Plaintiffs further assert that Defendants have failed and refused to answer or produce documents in response to specific discovery requests "under the color of baseless objections." (Document No. 54 at ¶ 18.) Plaintiffs assert that the Fund claims that nearly all of the discovery requests are defective because they do not contain a "temporal limitation," and that the discovery requests seeking information about other employers or other plan units are irrelevant. (Id. at 19-20.)

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The scope of discovery, therefore, is limited to nonprivileged information which is relevant to any party's claim or defense. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352, 98 S.Ct. 2380, 2390, (1978). Although evidence need not be admissible at trial, "[d]iscovery of matter 'not reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." Id.

Rule 33(b) of the Federal Rules of Civil Procedure provides how answers and objections to Interrogatories shall be made as follows:

(b) **Answers and Objections**.
(3) *Answering Each Interrogatory*: Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) *Objections*. The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

(5) *Signature*. The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Similarly, respecting Requests for Production of Documents, Rule 34(b) of the Federal Rules of

Civil Procedure provides as follows:

(b) **Procedure**.
(2) ***Responses and Objections***.

(B) *Responding to Each Item*. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

(C) *Objections*. An objection to part of a request must specify the part and permit inspection of the rest.

(D) *Responding to a Request for Production of Electronically Stored Information*. The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form – or if no form was specified in the request – the party must state the form or forms it intends to use.

(E) *Producing the Documents or Electronically Stored Information*. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

"Generic, non-specific objections will not suffice when posed in response to reasonable

Interrogatories. Objections to reasonable Interrogatories must be specific to each Interrogatory and

explain or demonstrate precisely why or how the party is entitled to withhold from answering."
VICA Coal Co., Inc. v. Crosby, 212 F.R.D. 498, 503 (S.D. W.Va. 2003).

To the extent that Defendants have provided responsive answers to Plaintiffs' Interrogatories and Requests for Production of Documents, and have agreed to provide the requested information, the undersigned does not address Defendants' objections.

**Interrogatories**:

**Interrogatory Nos. 2 and 3** ask Defendants to "[i]dentify all persons who participated in and/or provided information, proposals, or documents in connection with the negotiations or discussions culminating in the" 2004 and 2009 CBA, SPD, Plan Rules, PA, and/or other Plan Documents from 2003 or 2004 and 2008 or 2009. (Document No. 55, Exhibit 1 at 72.) Notwithstanding Defendants' objections to the Interrogatories (e.g., overly broad and burdensome, lack of temporal limitations, vague and ambiguous, and relevancy objections), Defendants identified 11 individuals responsive to Interrogatory No. 2 and seven individuals responsive to Interrogatory No. 3. (Id.) Defendants further indicated that additional names may be discovered in the corresponding documents produced, but that they were not aware of additional persons "who participated in and/or provided information, proposals or documents in connection with the negotiations." (Id.) In view of Defendants having identified individuals responsive to these two Interrogatories, the undersigned finds that despite their objections, Defendants' answers are satisfactory. Plaintiffs' Motion to Compel (Document No. 54.), is **DENIED** respecting **Interrogatory Nos. 2 and 3**.

**Interrogatory No. 4** asks Defendants to identify those persons who participated in or provided information and documents regarding the creating, promulgating, or approving of the 2011

9

Plan Rules or any modification of the 2009 Plan Rules. (Document No. 55, Exhibit 1 at 72-73.) Notwithstanding the objections of lack of temporal limitation, vague and ambiguous, and lack of definition for the words "creating" and "promulgating," Defendants identified four attorneys who were involved in the preparation and presentation. (Id.) Additionally, Defendants indicated that depending on the particular amendment, various other members of the Fund's staff could have been involved, primarily as the amendments related to issues not involved in the present litigation. (Document No. 62 at 12.) Defendants assert that it "would be wasteful to force the Fund to list every person involved in myriad technical amendments and other minutia of ERISA plan administration." (Id.) Additionally, Defendants assert that pursuant to Fed.R.Civ.P. 26(b)(1), the burden of culling through the hundreds of documents would outweigh Plaintiffs' benefit. (Id.) Accordingly, the undersigned finds that Defendants' answer was appropriate and that Plaintiffs' Motion to Compel (Document No. 54.), is **DENIED** respecting **Interrogatory No. 4**.

**Interrogatory No. 9** asks Defendants to provide an accounting of the Excess Assets of Plan Unit 155 when the Plan was terminated on or about January 31, 2013. (Document No. 55, Exhibit 1 at 73.) Defendants objected to the request because it improperly seeks discovery on an issue of damages when liability has not been established. (Id.) Defendants further objected on the grounds that compliance with the request requires them to generate a subjective analysis that does not already exist. (Id.) Additionally, Defendants assert that the request is vague and ambiguous respecting the definitions of "Excess Assets" and "accounting." (Id.) Nevertheless, in their supplemental response, Defendants assert that they will provide "documents sufficient to determine the aggregate amount of contributions made by The Greenbrier to the Fund, the aggregate amount of benefit payments made with respect to participa[nts]in Plan Unit 155, and the share of expenses allocated to Plan Unit

10

155." (Id. at 74.) Defendants thus have agreed to provide the documents necessary for Plaintiffs to prepare an accounting. They assert that Plaintiffs have failed to provide any basis which requires more on their part. (Document No. 62 at 13.)

"An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." Doe v. Cin-Lan, Inc., 2010 WL 726710, *8 (E.D. Mich. Feb. 24, 2010) (stating that a party "must allege facts to demonstrate why an accounting, as opposed to ordinary discovery devices, are necessary."); see also Ruffin v. Entertainment of the Eastern Panhandle, 845 F.Supp.2d 762, 769 (N.D. W.Va. 2011) (finding that the defendants failed to demonstrate why an accounting, as opposed to ordinary discovery devices, is necessary). In the instant case, Plaintiffs have failed to allege facts demonstrating that an accounting is necessary, as opposed to the usual discovery devices. Defendants have agreed to produce the information from which Plaintiffs may obtain the information they seek or even from which they may conduct their own accounting. Accordingly, Plaintiffs' Motion to Compel (Document No. 54.), respecting **Interrogatory No. 9**, is **DENIED**.

**Interrogatory No. 11** asks Defendants to identify every Plan Unit within the Fund aside from Plan Unit 155, in which contributions by the employer was to be based on the claims experience of the employer involved in that Plan Unit. (Document No. 54, Exhibits B, C, and H.) Defendants objected to the interrogatory on the basis that it was overly broad and unduly burdensome because it sought information about Plan Units other than the one at issue and lacked any temporal limitation. (Id.) Defendants further objected on grounds of relevancy. (Id.) Notwithstanding their objections, Defendants asserted that the Fund had 17 Plan Units and that the contribution rates for all Plan Units were based on numerous factors, one of which was the claim experience of the employer involved in that Plan Unit. (Id.) In their Response to Plaintiffs' Motion,

Defendants indicate that their response was that "for all Plan Units, the claims experience of employers involved in that Plan Unit is a factor in setting rates." (Id.) Defendants assert that they responded in full to the Interrogatory and that "[t]here is nothing more to say." The undersigned finds that Defendants have responded in full to Plaintiffs' Interrogatory No. 11 and that such response is appropriate. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Interrogatory No. 11**, is **DENIED**.

**Interrogatory No. 12** asks Defendants to identify each Plan Unit that includes, identifies, or addresses the excess assets, and indicate whether the plan unit had been terminated; whether the plan unit had excess assets at the time of termination; whether the excess assets were separated and placed in another plan, fund, or trust for the benefit of the participants and beneficiaries; and whether any excess assets associated with any plan unit were not separated from the other plan units. (Document No.55, Exhibit 1 at 75.) Defendants objected to the Interrogatory and asserted that it was overly broad and unduly burdensome, lacked any temporal limitations, was irrelevant, and used the vague and ambiguous term "excess assets."(Id.) Notwithstanding the objections, Defendants asserted that contributions to the Fund by an employer were commingled with contributions by all other employers in all Plan Units, and therefore, there were no funds specifically allocated to any single Plan Unit. (Id.) They further asserted that upon an employer's termination of participation in the Fund, their contributions are not repaid or refunded. (Id. at 75-76.) Subsequently, however, Defendants provided Plaintiffs with a sample of the other Plan Unit rules regarding excess assets. (Document No. 62 at 14 and Exhibit 3.) Plaintiffs contend that Defendants' answer evades the issue of Excess Assets. (Document No. 55 at 11.)

The undersigned finds that the information requested in this Interrogatory is relevant to

Plaintiffs' claims. The Court will address specific Plan Rules for other plans below. Nevertheless, to the extent that Plaintiffs seek the identification of specific other Plan Units in which there were "Excess Assets," at the time of termination, the undersigned finds that such information is relevant. Defendants shall identify such Plan Units that had excess assets at the time of termination for the period of January 1, 2003, through January 31, 2013. Defendants have indicated that any excess assets were commingled with contributions by other employers in all Plan Units. Nevertheless, Defendants should have record of the contributions and excess assets at the time of every employers' termination. Accordingly, Plaintiffs' Motion to Compel (Document No. 54.), respecting **Interrogatory No. 12**, is **GRANTED in part** and Defendants shall provide the responsive information by **Monday, April 27, 2015**.

**Interrogatory No. 13** asked Defendants to identify employers associated with the Fund whose employees voted to disaffiliate or was disaffiliated from UNITE HERE in favor of SEIU or other labor unions, and to indicate whether the disaffiliation was as a result of the Fund's or its Trustees' termination, and the disposition of any such excess assets at the time of termination. (Document No. 55, Exhibit 1 at 76.) Defendants asserted their usual objections and also that the request sought information in the possession of another person, which would require Defendants to speculate. (Id.) In their supplemental response, Defendants asserted that the Fund had various employees who voted to disaffiliate or had disaffiliated from UNITE HERE in favor of SEIU or other labor unions. (Id. at 77.) Nevertheless, the only Plan Unit that terminated in connection with this disaffiliation of local unions from UNITE HERE was Plan Unit 155. (Id.) None of the disaffiliated employers, other than The Greenbrier, requested the return of the excess assets and none were provided. (Id.)

13

Plaintiffs contend that Defendants' answer is incomplete and non-responsive. (Document No. 55 at 11.) Defendants assert that to allow such discovery requests to proceed amounts to an impermissible fishing expedition. (Document No. 62 at 14.) Defendants assert that the present action concerns a single employer's exit from the Fund after its employees disaffiliated with UNITE HERE and that Plaintiffs have failed to provide any basis for discovery "about what may have happened with respect to the numerous other employers nationwide that participate in the Fund." (Id.) The undersigned has directed that Defendants provide information regarding excess assets respecting other Plan Units in response to Interrogatory No. 12, and Defendants have indicated that Plan Unit 155 was the only Plan Unit that terminated regarding the disaffiliation of local unions from UNITE HERE. Plaintiffs have failed to demonstrate the relevancy of obtaining information regarding employers associated with the Fund whose employees voted to disaffiliate or was disaffiliated from UNITE HERE in favor of SEIU. The excess assets information of other Plan Units is the pertinent information, and therefore, the undersigned finds that Plaintiffs' Motion to Compel (Document No. 54.), respecting **Interrogatory No. 13**, is **DENIED**.

Finally, **Interrogatory No. 15** asked Defendants to identify anyone who participated in the discussions, negotiations, communications, and correspondence between the SEIU and UNITE HERE, which led to the agreement between SEIU and UNITE HERE. (Document No. 55, Exhibit 1 at 77.) Notwithstanding Defendants' objections, Defendants asserted that the Fund was not a party to the discussions, negotiations, or communications leading to the agreement between SEIU and UNITE HERE. (Id.) Defendants further referred Plaintiffs to the parties to the negotiations for information about negotiation. (Id. ) Plaintiffs contend that Defendants simply refused to answer the question, despite the knowledge of the Fund Chairman to advise participants and beneficiaries of

14

the termination resulting from the negotiations. (Document No. 55 at 11.) In their Response to the Motion to Compel, Defendants assert that Defendant John Wilhelm identified all persons involved in the negotiations. (Document No. 62 at 15 and Exhibit 4.) To the extent that Defendants have knowledge of the requested information, the undersigned finds that Plaintiffs' Motion to Compel (Document No. 54.), respecting **Interrogatory No. 15**, must be **GRANTED**.

**Requests for Production**:

Plaintiffs challenge Defendants' responses to 56 specific Requests for Production of Documents.

**1. Trust Agreements, Plan Rules, SPDs, Amendments, and Communications Concerning these Documents**:

Request Nos. 4-10, 12-16, 18, 21, 31-41, and 58-59 seek the production of documents relating to the Trust Agreements, Plan Rules, Summary Plan Descriptions ("SPD"), amendments and communications relating to these documents, resolutions or memoranda which discuss the amendments, documents from Trustee meetings concerning these documents, and all non-individualized communications to The Greenbrier, the participants, and beneficiaries and the Local Union concerning these actions. The Fund indicates that it already has produced the Trust Agreements with Amendments, Plan Rules for Plan Unit 155, and the Plan Unit 155 SPDs and Statements of Material Modification ("SMM"). (Document No. 62 at 15.) Accordingly, the undersigned finds that Defendants have complied with Request Nos. 4, 6, 8, and 10. Respecting all correspondence, communications, and other documents relating to these governing documents, Defendants have agreed to produce the resolutions reflecting consideration or adoption of the Sixth and Seventh Amended Trust Agreements, the 2004, 2009, and 2011 Plan Rules, and the SPDs; all

15

non-privileged memoranda or documents relating to the adoption of these documents; and would consider producing paper documents and Fund ESI reflecting non-privileged communications between Defendants and The Greenbrier or participants and beneficiaries of Plan Unit 155 or Local Unions about specific amendments to the Sixth and Seventh Trust Agreements and the three Plan Rules upon Plaintiffs' request to specific amendments, accompanied by an explanation of the perceived relevance. Based on the parties' agreement during their teleconferences, it was understood that Defendants would provide Plaintiffs with a list of all the Amendments to the Trust Agreements, Plan Rules, and SPDs. As Defendants object to producing all the voluminous Amendments, the undersigned finds the procedure outlined in the conference to be sufficient. Thus, to the extent that Defendants have agreed to provide the requested documents in Request Nos. 5, 7, and 9, the undersigned finds that their Responses are sufficient. However, pursuant to the parties' agreement during the conferences and according to Defendants' Supplemental Responses, Defendants are directed to provide Plaintiffs with a list of all Amendments to the governing documents, from which Plaintiffs may make additional requests for documents. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting Request Nos. 4-10 is **GRANTED in part and DENIED in part**. The Motion is **DENIED** respecting the sufficiency of Defendants' Responses to **Request Nos. 4, 6, 8, 9, and 10** and **GRANTED** to the extent that Defendants are required to produce a list of all Amendments to the governing documents pursuant to their Responses in **Request Nos. 5 and 7**, on or before **Monday, April 27, 2015**. Plaintiffs shall make additional requests for information pursuant to the identified Amendments on or before **Monday, May 4, 2015**, and Defendants shall provide the additional information and/or objections by **Monday, May 11, 2015**. The Court will schedule a telephonic conference to address any unresolved issues relating to the Amendments by **Friday, May**

16

**15, 2015**, upon request of Plaintiffs.

     **Request No. 12** seeks the production of communications regarding the CBAs; Request No. 13 seeks all memoranda of intent ("MOI"); **Request No. 14** seeks communications relating to the MOI; **Request No. 15** seeks all production agreements; and **Request No. 16** seeks communications relating to the production agreements. (Document No. 55, Exhibit 1 at 8-15.) Defendants objected to the Requests and asserted that the Requests were vague, overly broad, and unduly burdensome; lacked any temporal limitations; sought information that was irrelevant and protected by attorney-client privilege or work product doctrine; and required Defendants to conduct an exhaustive search at great cost. (Id.) Notwithstanding their objections, Defendants agreed to produce non-privileged paper documents and Fund ESI regarding the acceptance of the 2004 and 2009 CBAs; the May 28, 2003, December 2005, and June 19, 2009, MOIs; and the 2004 and 2009 Participation Agreement and Extension. (Id.) Defendants further agreed to produce all amendments or modifications to the May 28, 2003, the December 2005, and the June 19, 2009, MOI. (Id. at 11.) In view of Defendants' agreement to provide the requested documents, Plaintiffs' Motion (Document No. 54.), respecting **Request Nos. 12-16** is **DENIED**. To the extent however, that Defendants have not produced the requested documents, they shall do by **Monday, April 27, 2015**.

     **Request No. 18** seeks the production of all documents of any Trustee meeting in which amendments to the Plan Rules or SPDs were discussed. (Document No. 55, Exhibit 1 at 16-18.) Defendants asserted objections as stated above respecting earlier Requests but then agreed to produce non-privileged portions of the Trustee meetings that discussed such amendments and agreed to consider producing paper documents and Fund ESI regarding specific amendments identified by Plaintiffs. (Id.) Defendants have agreed to produce the requested documents, and therefore,

Plaintiffs' Motion (Document No. 54.), respecting **Request No. 18**, is **DENIED**. To the extent that Plaintiffs request additional information pursuant to the list of amendments to be provided, Plaintiffs shall follow the procedure outlined above.

**Request No. 21** seeks all Fund, Plan Unit 155, and Trustee resolutions, whether adopted or proposed, related to Plan Unit 155. (Document No. 55, Exhibit 1 at 20-21.) Defendants asserted their usual objections, including relevancy and lack of temporal limitation. (Id. at 21.) The undersigned finds that such requested documents are relevant to Plaintiffs' claims and hereby direct that Defendants produce the requested documents from **January 1, 2003, through January 31, 2013**. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 21**, is **GRANTED**, and Defendants' shall provide the responsive documents by **Monday, April 27, 2015**.

**Request Nos. 31-41** seek the production of contribution invoices, reconciliations, and audits (#31); documents evidencing contributions (#32); cost impact reports (#33); records pertaining to tax obligations or reporting (#36); terminal reports (#37); documents relating to contribution rates upon expiration of the 2004 CBA, in connection with the 2009 CBA, and following the adoption of the 2009 CBA (#39-40); and documents relating to the consideration or adoption of the contribution rates (#41). (Document No. 55, Exhibit 1 at 32-44.) Defendants asserted their usual objections but then agreed to provide the requested documents. Accordingly, the undersigned hereby **DENIES** Plaintiffs' Motion (Document No. 54.), respecting **Request Nos. 31-33, 36-37, and 39-41**, as Defendants' responses reflect their agreement to produce the requested documents. To the extent that Defendants have not produced the documents, they shall do so on or before **Monday, April 27, 2015**.

**Request Nos. 35 and 38** seek the production of all general documents regarding the financial

status of Plan Unit 155 and the Fund. (Document No. 55, Exhibit 1 at 36-38, 40-41.) Defendants agreed to provide copies of invoices and correspondence regarding invoice reconciliation, non-cumulative records that evidence the contribution history, non-cumulative documents that reflected benefit payments and other expenses, and agreed to make available for inspection at Defendants' offices in Aurora, Illinois, records relating to payroll audits by the Fund of The Greenbrier. (Id. at 38.) Pursuant to Plaintiffs' letter, dated March 6, 2014, to defense counsel, it appears that Plaintiffs are satisfied with Defendants' Response, to the extent that they produce such information. Plaintiffs express a distaste to traveling to Illinois to inspect records relating to payroll audits and requested additional information as to what was contained in the records. To the extent that the parties are unable to resolve the matter without a trip to Illinois, the undersigned finds that pursuant to Rule 34, Defendants' response is proper in that it allows Plaintiffs an opportunity to inspect voluminous documents at its offices in Illinois. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request Nos. 35 and 38**, is **DENIED**. To the extent that Defendants have not produced the requested information, they shall do so by **Monday, April 27, 2015**.

**Request Nos. 58-59** seek documents reflecting the procedures for amending, modifying, or revising the Trust Agreements and Plan Rules that have been in effect since January 1, 2003. (Document No. 55, Exhibit 1 at 64-66.) Defendants asserted several objections, including great burden and expense and that the information sought for Plan Units other than Plan Unit 155 is irrelevant. (Id. at 65.) The undersigned agrees and finds that all documents reflecting procedures for amending, modifying, or revising the Trust Agreements and Plan Rules concerning Plan Unit 155 are relevant to Plaintiffs' claims. To the extent that Plaintiffs seek such information regarding other Plan Units, they have failed to establish why such information is relevant. Accordingly, Plaintiffs'

19

Motion (Document No. 54.), respecting **Request Nos. 58 and 59**, is **GRANTED** to the extent that the requested information is limited to Plan Unit 155 and **DENIED** to the extent that it seeks such information regarding other Plan Units. Defendants shall produce the requested information by **Monday, April 27, 2015**.

## 2. Termination of Plan Unit 155:

**Request No. 17** seeks the production of all communications and correspondence to The Greenbrier, participants, or beneficiaries in Plan Unit 155 and the Local Unions relating to the Trust Agreements and Plan Unit 155 regarding the amendment and termination of Plan Unit 155, the transfer of Excess Assets to the New Greenbrier Trust, and the disposition of Excess Assets. (Document No. 55, Exhibit 1 at 15-16.) Notwithstanding their objections, Defendants agreed to produce all Plan Unit 155 SPDs and SMMs from when The Greenbrier participated in the Fund as well as any paper documents and Fund ESI reflecting non-individualized communications as requested when The Greenbrier participated in the Fund. (Id.) Plaintiffs take issue with Defendants' imposed temporal limitation to the period when The Greenbrier participated in the fund. (Document No. 55 at 14-15.) Plaintiffs have not demonstrated the relevance for such documents beyond The Greenbrier's period of participation in the Fund. As Plaintiffs further do not object to Defendants' response to Request No. 17, the undersigned finds that Defendants' response is appropriate and Plaintiffs' Motion (Document No. 54.), respecting **Request No. 17**, is **DENIED**.

**Request No. 19** seeks the production of all documents of all Trustee meetings that addressed or discussed the termination of Plan Unit 155. (Document No. 55, Exhibit 1 at 18-19.) Defendants agreed to produce redacted non-privileged portions of the Trustee meeting minutes that addressed the termination of Plan Unit 155 and redacted non-privileged presentations or other documents that

addressed those topics and which were distributed to the Trustees at their meetings. (Id. at 19.) Plaintiffs assert that Defendants have limited their response to documents associated only with the Trustee meetings, when Plaintiffs requested any documents, "not just from Trustee meetings, relating to the termination of Plan Unit 155." (Document No. 55 at 14-15.) In response, Defendants note Plaintiffs' acknowledgment that Defendants agreed to produce all non-privileged documents concerning the termination of Plan Unit 155, and assert that any dispute respecting termination documents "is illusory." (Document No. 62 at 15.) In view of Defendants' response, the undersigned finds that Defendants have agreed to produce all documents relating to the termination of Plan Unit 155, and not just those documents associated with Trustee meetings. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 19**, is **DENIED**. To the extent that Defendants have not produced the requested information, they shall do so by **Monday, April 27, 2015**.

**Request No. 22** seeks the production of all materials provided to the Trustees at any Trustee meeting of any kind since January 1, 2003, regarding the disaffiliation of employees from UNITE HERE, plan termination, amendment of plan documents regarding termination and excess assets, or the termination or dissolution of any other plan unit. (Document No. 55, Exhibit 1 at 22-23.) Defendants objected to the extent that the request was not limited to Plan Unit 155 and The Greenbrier and that it sought information about "any other employer or plan unit." (Id. at 23.) Defendants further asserted attorney-client privilege or work product doctrine and objected because the request required Defendants to "conduct an exhaustive search for documents among hundreds of thousands of documents" at great expense to Defendants. (Id.) Defendants contend that the burden and expense associated with responding outweighed the likely benefit. (Id.)

Plaintiffs assert in their Motion that the Request is limited only to plan terminations and did

21

not seek every document about every Trustee meeting since January 1, 2003. (Document No. 55 at 16.) Defendants respond that even with such limitation, the request remains overly broad. (Document No. 62 at 16.) Defendants agreed to produce all documentation, including Trustee meeting materials, that related to the termination of Plan Unit 155, but stated that there is no permissible basis for the "wholesale production of documentation regarding other Plan Units." (Id.) In Reply, Plaintiffs assert that the requested information is relevant "to the manner in which Plan Unit 155 was terminated, and whether that manner and method is consistent with the Fund's usual and customary operation." (Document No. 65 at 14.)

The undersigned finds that Request No. 22 is not overly broad and seeks information that is relevant to Plaintiffs' claims. Plaintiffs have established that the production of termination-related documents from other plans is necessary to determine whether Plan Unit 155 was terminated in a manner consistent with the Fund's usual and customary operation of termination. Accordingly, Plaintiffs' Motion to Compel (Document No. 54.), is **GRANTED** respecting **Request No. 22**. Defendants shall by **Monday, April 27, 2015**, provide Plaintiffs with supplemental documents regarding Plan Unit 155 and other plan units.

**Request No. 23** seeks the production of all documents relating to the consideration, analysis, or adoption of any Trust Agreement and amendments or modifications to any Trust Agreement, or policies or procedures concerning the termination of a particular employer or plan unit by the Fund, including paragraph 6.06 of the Seventh Amended Trust or similar provisions regarding earlier Trust Agreements. (Id. at 23-24.) The Fund agreed to produce all non-privileged documents about the adoption of language as part of the Sixth and Seventh Amended Trust Agreements. (Id. at 24.) Plaintiffs take issue with Defendants limiting their responsive documents only to Section 6.06 of the

22

Seventh Amended Trust Agreement. (Document No. 55 at 15.) In view of Defendants' response as addressed respecting Request No. 22, the undersigned finds that, to the extent that they have not, Defendants shall produce the requested information pertaining to any Trust Agreement respecting Plan Unit 155. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 23**, is **GRANTED in part**; Defendants shall produce all responsive documents by **Monday, April 27, 2015**.

**Request No. 28** seeks documents relating to consideration, analysis, or adoption of Plan Rules and amendments to Plan Rules, and all policies or procedures concerning the termination of The Greenbrier of Plan Unit 155 by the Fund, Plan Unit, or Trustees. (Document No. 55, Exhibit 1 at 29-30.) The Fund agreed to produce non-privileged paper documents and Fund ESI regarding the adoption of Plan Rules or amendments related to the termination of The Greenbrier as a participating employer in the Fund or to the termination of Plan Unit 155. (Id. at 30.) Plaintiffs object to the limitation of information imposed by Defendants. (Document No. 55 at 15.) To the extent that Plaintiffs seek documents related to the amendments of the Plan Rules, the undersigned has addressed this matter and directs that Defendants produce all documents relating to the amendments of the plan rules respecting Plan Unit 155. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 28**, is **DENIED**. Defendants shall provide any further responsive documents by **Monday, April 27, 2015**.

**Request No. 52** seeks the production of all documents since January 1, 2003, among or between the Fund and Trustees regarding any changes to the Trust Agreements, Plan Unit 155 Rules, or Plan Unit 155 SPDs, and the effect of a choice in wording in any such amendments, revisions, or modifications regarding the termination of Plan Unit 155 and the disposition of Excess Assets

23

upon termination. (Document No. 55, Exhibit 1 at 55-58.) Defendants again asserted numerous objections, including that responding would be overly burdensome and expensive on Defendants. (Id. at 56.) Defendants also agreed to produce non-privileged paper documents and Fund ESI regarding provisions of the Sixth and Seventh Trust Amendments; the 2004, 2009, and 2011 Rules for Plan Unit 155; and the 2004 and 2009 SPDs that relate to the termination of Plan Unit 155. (Id.) They further agreed in their Supplemental Response to provide all amendments to the Sixth and Seventh Trust Amendments through January 31, 2013; a list of Amendments to the 2004, 2009, and 2011 Rules for Plan Unit 155; and a list of all non-individualized communications between the Fund and participants or beneficiaries of Plan Unit 155. (Id. at 56-57.) Defendants stated that they would consider producing paper documents and Fund ESI regarding any specific communication, amendment, or resolution contained on the list upon request by Plaintiffs and an explanation of the perceived relevance of the requested documents to the issues in the case. (Id. at 57.)

Plaintiffs assert in their Motion that it is not clear whether Defendants intend to comply with the Request due to their limiting language in their response. (Document No. 55 at 15.) The undersigned finds that despite Defendants' objections, they have agreed to produce responsive information. Accordingly, to the extent that Defendants have not provided the requested information, they shall do so by **Monday, April 27, 2015**. In view of Defendants' response, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 52**, is **DENIED**.

**Request No. 61** seeks documents reflecting the procedures and requirements for terminating any plan within the Fund, including Plan Unit 155. (Document No. 55, Exhibit 1 at 67-68.) Defendants objected to the request in their usual fashion and asserted that "the documents that contain the procedure for terminating a Plan Unit within the Fund are the applicable Trust

24

Agreement and the Plan Unit rules." (<u>Id.</u> at 68.) Defendants have provided Plaintiffs with the pertinent Trust Agreements and Plan Unit Rules as they relate to Plan Unit 155. To the extent that Plaintiffs have requested the agreements and rules relating to other Plan Units, the undersigned has denied such requests. Accordingly, the undersigned finds that Defendants' response is proper and that they have produced the requested information. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 61**, is **DENIED**.

**3. <u>Documents Related to the Agreement between UNITE HERE and SEIU</u>:**

     **Request Nos. 24-27** seek the production of documents related to the negotiation and settlement between SEIU and UNITE HERE. (Document No. 55, Exhibit 1 at 25-29.) Defendants asserted objections including vague, overly broad, and unduly burdensome; the requests sought documents not in Defendants' possession but in the possession of UNITE HERE or SEIU; attorney-client and work product doctrine; and great expense. (<u>Id.</u>) Nevertheless, Defendants asserted that they would produce non-privileged paper documents and Fund ESI regarding the termination of Plan Unit 155 and the withdrawal of The Greenbrier as a participating employer in the Fund. (<u>Id.</u>) Plaintiffs assert in their Motion that Defendants' responses are inconsistent with their agreement during the conferences prior to filing the Motion to Compel. (Document No. 55 at 16.) During the conferences, Plaintiffs assert that Defendants agreed to produce documents relating to the Settlement Agreement between UNITE HERE and SEIU. (<u>Id.</u>) In response, Defendants assert that to the extent that the Fund has any non-privileged documents in their possession about the agreement's effect on Plan Unit 155 or The Greenbrier, it will produce those documents. (Document No. 62 at 16-17.) However, Defendants again assert that they were not parties to the agreement, and therefore, may not have responsive documents.

In view of Defendants' responses to the discovery requests and the Motion to Compel, the undersigned finds that Defendants' responses to the discovery requests are proper. Defendants have agreed to provide responsive documents to the extent that such documents are in their possession. Moreover, Defendants have indicated that they will provide all non-privileged documents concerning the termination of Plan Unit 155 (#27). Plaintiffs have subpoenaed the SEIU and UNITE HERE, and therefore, should be able to obtain any documents not in Defendants' possession. Accordingly, Plaintiffs' Motion to Compel (Document No. 55.), respecting **Request for Production Nos. 24-27**, is **DENIED**.

### 4. <u>Reserves</u>:

Plaintiffs seek the production of documents concerning Defendants' reserve policy in **Request for Production No. 43**. This request seeks the production of all documents relating to, modifying, or consideration of, a reserve policy in connection with the Fund or any plan unit, including Plan Unit 155, since January 1, 2013. (Document No. 55, Exhibit 1 at 45-46.) Defendants objected on the grounds that the Request was overly broad, unduly burdensome, and vague; sought information protected by the attorney-client privilege or work product doctrine; and was not relevant to any claim or defense. (<u>Id.</u>) Defendants further objected because the Request required Defendants to search hundreds of thousands of documents at great expense to them. (<u>Id.</u> at 46.) Notwithstanding their objections, Defendants agreed to produce the reserve policy of the Fund. (<u>Id.</u>)

In their Motion, Plaintiffs assert that they seek documents relating to the application of the reserve policy to other plan units "which may evidence mistreatment of the participants and beneficiaries of Plan Unit 155 (among other reasons), in addition to all the documents about establishing, modifying, or considering the reserve policy. (Document No. 55 at 17.) In response,

Defendants assert that they agree to produce the reserve policy and documents pertaining to it as it relates to Plan Unit 155. (Document No. 62 at 17.) Defendants however, object to producing such policy and related documents as it relates to all plan units other than Plan Unit 155 on the grounds of proportionality and relevance limitations as set forth in Fed.R.Civ.P. 26(b)(1). (Id.) Defendants assert that the Request encompasses most every document in their possession as they all relate in some fashion to the reserve policy. (Id.) Furthermore, Defendants assert that such information involves highly confidential financial information, which production thereof could cause "a pronounced and deleterious impact on participating employers' willingness to participate in the Fund." (Id.) Due to the highly confidential nature of the inputs used to develop and maintain the Reserve Policy, Defendants assert that Plaintiffs are unable to establish any entitlement to documents regarding the development of the Reserve Policy because it was effective in 2002, two years prior to The Greenbrier entering the Fund. (Id.)

Plaintiffs indicate that reserve policy information respecting other Plan Units is needed to determine any mistreatment of the participants and beneficiaries of Plan Unit 155. Defendants have indicated, however, that such information encompasses nearly every document in its possession. In an effort to limit the volume of responsive documents, the undersigned finds that Plaintiffs may discover the actual reserve policy for the other Plan Units, with any amendments, from January 1, 2003, through January 31, 2013. Additionally, Plaintiffs may discover any other documents reflecting the modification or consideration of amendments to the reserve policy respecting Plan Unit 155, in addition to the policy itself. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 43**, is **GRANTED in part**. Defendants shall produce the responsive information by **Monday, April 27, 2015**.

Similarly, **Request No. 45** seeks documents relating to the consideration of adding or deleting any language concerning excess assets in the Plan Rules of any Plan Unit, other than Plan Unit 155, within the Fund. (Document No. 55, Exhibit 1 at 45-48.) The undersigned finds that Plaintiffs are entitled to such information with the same limitations respecting Request No. 43. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 45** is **GRANTED in part**. Defendants shall produce the responsive information by **Monday, April 27, 2015**.

**Request No. 20** seeks the production of all documents of any Trustee meeting in which The Greenbrier's request for the transfer of excess assets to The New Greenbrier Trust was addressed or discussed. (Document No. 55, Exhibit 1 at 19-20.) Defendants objected, but asserted that they would produce non-privileged excerpts of the minutes of any meeting of the Trustees of the Fund at which The Greenbrier's request for a transfer of assets from the Fund in connection with its withdrawal from the Fund was discussed, in addition to redacted non-privileged presentations or other documents that discussed those topics and were distributed to the Trustees at a meeting. (Id. at 20.) Notwithstanding Defendants' objections, the undersigned finds that Defendants have agreed to produce the requested information. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 20**, is **DENIED**. To the extent that Defendants have not produced the responsive information, they shall do so by **Monday, April 27, 2015**.

**Request Nos. 29 and 30** seek the production of documents relating to consideration, adoption, or modification of Plan Rules concerning the Excess Assets in Plan Unit 155, and documents relating to the transfer of the excess assets or the use or disposition of the excess assets relating to the request made in the May 10, 2013, letter from James T. Miller to the CEO of UNITE HERE Health. (Document No. 55, Exhibit 1 at 30-32.) Defendants agreed to produce any non-

privileged document concerning Article 19, Section 11 of the 2004, 2009, and 2011 Plan Rules, or

concerning the handling of the excess assets pertaining to the Plan Rules for Plan Unit 155. (Id.)

Notwithstanding Defendants' objections, the undersigned finds that Defendants have agreed to

produce the requested information. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting

**Request Nos. 29-30**, is **DENIED**. To the extent that Defendants have not produced the responsive

information, they shall do so by **Monday, April 27, 2015**.

**5. Collective Bargaining Negotiations and 2004 and 2009 Plan Documents**:

Plaintiffs seek all notes and other documents, in addition to communications by the Fund,

Trustees, and Local Unions relative to the 2004 and 2009 collective bargaining agreement

negotiations in **Request Nos. 46-49**. (Document No. 55, Exhibit 1 at 48-53.) Plaintiffs assert that

the limiting nature of Defendants' responses indicate that they are not producing all responsive

documents. (Document No. 55 at 17.) In Response, the Fund asserted that it has agreed to produce

any non-privileged documents in its possession responsive to the particular discovery requests.

(Document No. 62 at 18.) Defendants have limited their responses to the extent that such responsive

documents are in their possession. Accordingly, the undersigned finds that Defendants' responses

to the discovery requests are appropriate and that Plaintiffs' Motion to Compel (Document No. 54.),

respecting **Request for Production Nos. 46-49**, is **DENIED**. To the extent that Defendants have

not produced all the documents responsive to these Requests, they shall do so by **Monday, April

27, 2015**.

**6. Information on Other Plan Units**:

**Request for Production No. 44** seeks the production of plan rules, SPDs, and financial

documents relating to the excess assets for each plan unit identified in Interrogatory Nos. 11-13,

since January 1, 2004. (Document No. 55, Exhibit 1 at 46-47.) Defendants objected and asserted that

the Request was overly broad and unduly burdensome to the extent that it sought information about

all plan units other than Plan Unit 155. (<u>Id.</u>) Defendants further objected on the grounds of attorney-

client privilege and work product doctrine, vague and ambiguous definition of "Excess Assets," and

that the requested information is irrelevant. (<u>Id.</u> at 46-47.) Additionally, Defendants asserted that it

would require them to conduct an exhaustive search for documents at great expense. (<u>Id.</u> at 47.)

Nevertheless, Defendants agreed to produce examples of the relevant portions of the Plan Unit Rules

for other Plan Units that address Excess Assets. (<u>Id.</u>) **Request No. 51** seeks communications and

correspondence documents since January 1, 2003, between the Fund and the Trustees as to the

employers whose contributions were insufficient to pay the claims and reasonable administrative

expenses of their employees. (<u>Id.</u> at 54-55.) Defendants again objected on the same grounds. (<u>Id.</u>)

**Request No. 57** seeks information regarding the process of invoicing employers other than The

Greenbrier, to the extent that the process was different from the process for Plan Unit 155 and all

documents evidencing such process. (<u>Id.</u> at 62-64.) **Request No. 60** seeks all documents relating to

the procedures for amending or modifying the SPDs or other Plan SPDs which were in effect at any

time since January 1, 2003. (<u>Id.</u> at 66-67.) Defendants objected but then asserted that the Fund has

no specific written policy or procedure dealing with amending SPDs. (<u>Id.</u> at 67.) Defendants explain

that SPDs are modified when changes are made to the terms of the applicable plan documents at the

times required by ERISA and the applicable regulations. (<u>Id.</u>)

       In their Motion, Plaintiffs assert that it was their understanding from the conferences with

Defendants, that  Defendants would produce documents related to other plan units in the Fund

responsive to Request for Production Nos. 44, 51, 57, and 61. (Document No. 55 at 18.) Defendants'

supplemental responses, however, indicate that is not the case. (Id.) Defendants respond that the Fund has over 20 Plan Units and this action pertains only to one Plan Unit, Plan Unit 155. (Document No. 62 at 18.) Requiring Defendants to provide the SPDs, financial records, and information regarding underfunded Plan Units would require the production of thousands of documents "that have nothing to do with the narrow issues in this case." (Id.) They assert that Plaintiffs have failed to show the relevance in the requested documents. (Id. at 19.)

Plaintiffs have indicated that excess asset information respecting other Plan Units is needed to determine any mistreatment of the participants and beneficiaries of Plan Unit 155. Respecting Request Nos. 43 and 45, the undersigned has directed Defendants to produce the reserve policies for other Plan Units, as well as documents relating to the consideration of adding or deleting any language concerning excess assets in the Plan Rules of any Plan Unit, from January 1, 2003, through January 31, 2013. Plaintiffs, therefore, are entitled only to the portions of the actual Plan Rules and SPDs of other Plan Units regarding excess assets. The undersigned finds, however, that Plaintiffs have not demonstrated the relevance for all financial documents for other Plan Units at this time. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 44**, is **GRANTED in part**. Defendants shall produce only those portions of the Plan Rules and SPDs of other Plan Units that concern excess assets, from **January 1, 2003, through January 31, 2013**. Defendants have asserted that SPDs are amended only pursuant to the requirements of ERISA and applicable guidelines. Accordingly, the undersigned interprets Defendants' response to mean that there are no documents evidencing the procedures for the SPDs, and, therefore, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 61**, is **DENIED**.

Respecting **Request No. 57**, the undersigned finds that Plaintiffs have not demonstrated the

relevancy of the invoicing procedures for other Plan Units. Accordingly, the undersigned finds that the burden of producing the documents outweighs the relevance, and that Plaintiffs' Motion (Document No. 54.), respecting **Request No. 57**, is **DENIED**.

Finally, Plaintiffs seek documents since January 1, 2003, between the Fund and the Trustees as to the employers whose contributions were insufficient to pay the claims and reasonable administrative expenses of their employees. To the extent that the information may show that other employers pay the claims and expenses of other employers who had insufficient contributions, thereby depleting the "Excess Assets," the undersigned finds that such information is relevant. Accordingly, Plaintiffs' Motion (Document No. 54.), respecting **Request No. 51**, is **GRANTED**. Defendants shall produce all responsive information by **Monday, April 27, 2015**.

**Request for Fees and Costs**:

The undersigned has granted in part and denied in part Plaintiffs' Motion to Compel. Accordingly, it is hereby **ORDERED** that Plaintiffs' request for attorneys' fees and costs is **DENIED**.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 10 days, objections to this Order with District Judge Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is directed to send a copy of this Order to counsel of record.

ENTER: April 13, 2015.

R. Clarke VanDervort
United States Magistrate Judge