## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

GREENBRIER HOTEL CORPORATION, et al.,

        Plaintiffs,

v.                            CIVIL ACTION NO.  5:13-cv-11644

UNITE HERE HEALTH, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Plaintiffs' Statement of Attorneys' Fees and Expenses Pursuant to ERISA § 502(g)* (Document 242), the *Defendants' Response to Plaintiffs' Motion for Fees and Costs* (Document 245), the *Plaintiffs' Reply in Support of Statement of Attorneys' Fees and Expenses Pursuant to ERISA § 502(g)* (Document 247), as well as all attached exhibits.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involved a dispute between the Greenbrier hotel and a group of its employees who participate in its health benefits plan, and UNITE HERE Health Fund, H.E.R.E.I.U. Welfare Fund-Plan Unite 155, and the Plan Trustees (collectively, the Fund). The Greenbrier and its employees participated in an ERISA health benefits plan provided by UNITE HERE Health from 2004 until January 2013. Although the Fund is a multi-employer plan, the Greenbrier was in its own plan unit, with distinct contributions, benefits, and rate calculations. When the Greenbrier changed unions and switched to a self-funded health benefits plan in 2013, it sought the surplus assets attributable to its employee contributions. The Fund declined to make any transfer of

assets, and the Greenbrier brought this suit. Following a bench trial in June and July 2016, the Court found in favor of the Plaintiffs. The Court issued a *Memorandum Opinion and Order* (Document 239) on August 26, 2016, finding that the Plaintiffs were entitled to $5,503,181.00. The Court also granted the Plaintiffs' request for reasonable attorneys' fees and costs, and ordered the parties to complete briefing with respect to the appropriate calculation of costs and fees.

## STANDARD OF REVIEW

When considering motions for attorneys' fees available by statute, the Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court's assessment of the requested award should include consideration of hours which were spent excessively, redundantly, or unnecessarily. *Id.* at 434. This starting calculation is referred to as the lodestar amount. *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008). To determine the reasonable hourly rate, "the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

The Fourth Circuit Court of Appeals has provided further guidance on the calculation of reasonable attorneys' fees and has established twelve factors that a district court should consider when calculating reasonable attorneys' fees. These factors are known as the *Johnson* factors and are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of

the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom*, 549 F.3d at 321. Upon completion of this lodestar calculation, a "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir.2002)). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Johnson*, 278 F.3d at 337.

## DISCUSSION

The Plaintiffs initiated this suit in May 2013. They were represented by the law firm of Spilman, Thomas & Battle (Spilman) until the fall of 2014, when they switched counsel and The Masters Law Firm took the case on a contingency basis. In total, they seek $2,112,480.02 in fees and costs. Of that, $780,749.41 is attributable to attorneys' fees for Spilman, $5,321.05 is attributable to costs for Spilman, $489,047.00 is attributable to fees for Marvin W. Masters of The Masters Law Firm, $576,742.50 is attributable to fees for Kimberly K. Parmer of The Masters Law Firm, and $260,628.89 is attributable to costs for The Masters Law Firm.

The Defendants challenge the requested fees on several grounds and also urge the Court to conclude that no award of fees should be made.[1] They argue that the Plaintiffs have not provided sufficient evidence to support the fees and that the requested hourly rates for attorneys Marvin Masters and Kimberly Parmer are unreasonably high. The Defendants also challenge the hours billed as excessive and inadequately supported by vague billing records. They assert that some

---

[1] For the reasons stated in the Court's *Memorandum Opinion and Order* (Document 239), the Court again concludes that an award of attorneys' fees and costs to the Plaintiffs is proper under the factors set forth in *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993).

records reflect block billing, very long work days, including billing for twenty or more hours per day on certain occasions, and billing for non-legal tasks. In addition, the Defendants request a reduction for work related to unsuccessful claims, as well as duplicative work related to overstaffing and to the transfer of the case from Spilman to The Masters Law Firm. In total, the Defendants argue that, if fees are awarded at all, they be reduced to $952,665.03.

### A. Hourly Rate

Kevin Carr, Co-Chair of the Labor and Employment Practice Group at Spilman, submitted an affidavit detailing the time he and other attorneys and staff members spent on this matter. Hourly rates for members who worked on this case ranged from $275 to $335; associates billed $150 to $250 per hour; senior attorneys and counsel ranged from $175 to $330 per hour. The firm billed $110 per hour for paralegals and law clerks. Mr. Carr attached supporting affidavits from other experienced attorneys in the area stating that the hourly rates were competitive, and perhaps on the low end, for the market. The Defendants do not contest the hourly rates requested by the Spilman attorneys, and, as a firm that regularly charges and receives the requested hourly rate from paying clients in the area, the Court finds that the rates requested by Spilman are reasonable. The Defendants also submitted an affidavit from Sara E. Hauptefuehrer, who is of counsel at Steptoe & Johnson, PLLC, specializing in employment law, employee benefits, and ERISA litigation. (Document 245-61.) She states that her top hourly rate is $335.

The Master Law Firm typically handles cases on a contingency basis. However, Mr. Masters asserts an hourly rate of $650, and Kimberly Parmer asserts an hourly rate of $450. Mr. Masters has over forty years of varied legal experience, including complex litigation and extensive trial experience. Ms. Parmer has nearly fifteen years of legal experience, including private practice in her own firm and work as an associate and then Senior Attorney at Spilman. She began

working at The Masters Law Firm in 2014.   Both cite the complex and document intense nature of this case as support for their hourly rates.   Additionally, these lawyers have submitted affidavits from five (5) experienced litigation attorneys who practice within the West Virginia geographic area and who state that Mr. Masters and Ms. Parmer's requested hourly rates are reasonable given their experience and the complexity of the litigation.   The Defendants argue that the Court should apply rates of $335 per hour for Mr. Masters, based on the rates partners at Spilman charged, and of $185 or $250 per hour, based on the hourly rates for associates or senior associates at Spilman, where she worked prior to the Masters Law Firm.

The Court observes that the four (4) experienced litigation attorneys, who submitted affidavits in support of the Spilman partners' fees, noted that the rates were on the low end for the market,[2] which comports with the Court's experience.   The Court recently granted fees at a rate of $400 per hour for a partner and $300 per hour for associates, in the Fayetteville, West Virginia, firm of Hamilton, Burgess, Young & Pollard.   *See, Daugherty v. Equifax Information Service, LLC*, 5:14-cv-24506, Document 239 (October 12, 2016).   This matter involved greater complexity in a more specialized area of the law than did *Daugherty*.   In addition, as Plaintiffs' counsel points out, by accepting the case on a contingency basis, they accepted upfront costs and the risk of receiving no payment at all if the litigation was not successful.   However, even the local cases cited by the Plaintiffs do not support fees of $650 for a senior partner and $450 for a senior associate or junior partner.[3]

---

[2] Although the trial was held in Charleston, this case was assigned to the Beckley division.   However, the Court finds that it was reasonable for the Plaintiffs to obtain counsel in the larger market of Charleston, given the matters at issue in the litigation.   *See, e.g., Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (finding that courts may consider the rates in the community where the attorneys are based if it was reasonable for the Plaintiffs to retain counsel from outside the community where the action is based.)

[3] Ms. Parmer's title is not clear.   Her experience and skill, as displayed throughout her time on this case, are certainly comparable to partner-level attorneys.   The Defendants' attempt to hold her to her hourly rate at Spilman (though there is no evidence of precisely what that hourly rate was) assumes that rate accurately reflected her value as an attorney, and ignores the fact that lawyers often change jobs in part to receive higher compensation.

The Court has carefully considered the *Johnson* factors.   The outcome in this matter may have ultimately turned on the language of a few key documents, but the issues involved in the litigation, and the various legal arguments presented by the Defendants as well as the Plaintiffs, involved complex and relatively novel theories requiring skilled attorneys.   The Masters Law Firm accepted the case on a contingency basis, and the time that Mr. Masters and Ms. Parmer devoted to this case likely prevented them from accepting other work.   The Masters Law Firm and Mr. Masters have an excellent reputation as plaintiffs' attorneys, though no particular expertise in ERISA.[4]   This was an expensive case to bring to trial.   Spilman chose to cease representing the Plaintiffs during the course of the litigation, suggesting that the case was somewhat undesirable within the legal community.   Courts in this district have regularly awarded fees in the $300-400 range for less complex work by attorneys with similar or lesser experience.[5]   *See*, *In re: Am. Med. Sys., Inc.*, No. 2325, 2016 WL 3198355, at *4 (S.D.W. Va. June 8, 2016) (Eifert, M.J.) (collecting recent fee awards in the Southern District of West Virginia).

The Court finds, given the *Johnson* factors relevant to hourly rates, the evidence presented regarding rates in this matter, and in light of the Court's experience and familiarity with the local market, that $550 per hour is a reasonable and competitive rate for Mr. Masters, and $400 is a reasonable and competitive rate for Ms. Parmer.

---

4  Because ERISA cases with fee awards are not common in this market, and many parties to such cases obtain counsel from firms outside this market, the Court has considered fees awarded in other civil litigation.

5  The United States District Court of Maryland Local Rules include guidelines as to hourly rates within that district. *Local Rules*, United States District Court for the District of Maryland, at 127 (July 1, 2016).   Although Maryland is a different legal market, it includes both markets larger and more expensive than Charleston and/or Beckley, and markets comparable to those in West Virginia, and the guidelines used there provide a helpful comparison.   Those guidelines suggest rates of $225-350 for attorneys admitted to the bar for nine to fourteen years, and $300-475 for attorneys with twenty or more years of experience.

## B. *Reasonable Hours Expended*[6]

As discussed above, this was a complex and vigorously defended case with extensive discovery. The litigation progressed for more than three years, without significant periods of inactivity. The Court notes that the Defense, while opposing the hours spent and rates charged by Plaintiffs' counsel, has given no indication of the hours billed by their attorneys. Based on the Court's involvement in this matter, the time for which the Plaintiffs' counsel billed is not outside the range expected for document intensive litigation with many complex legal issues surrounding the core claims.[7] In addition, the Plaintiffs were quite successful. Although the Court dismissed alternative claims, the Plaintiffs ultimately received essentially the full relief they sought. Therefore, the Court finds that reductions for unsuccessful claims are not justified here, as presenting alternate legal theories is a reasonable legal strategy. Nonetheless, the Court finds that some reductions are appropriate.

Spilman billed more than 3500 hours, by nineteen personnel, at various rates, over the course of twenty-two months, for a total of $780,749.41. That includes 175.41 hours billed by five timekeepers related to preparation of the complaint, totaling $43,843.20, and an additional 356.29 hours, totaling $92,228.80, billed for other tasks prior to the filing of the complaint. The total billed also includes 86.32 hours and $23,310.50 for tasks directly related to the transfer of the

---

6 The Defendants retained the services of an expert to audit the Plaintiffs' fee request. The Plaintiffs ask that the expert's affidavit be stricken. The Court has carefully reviewed the documents submitted by the Defendants and their expert. The Court declines to strike the documents submitted by the Defendants' expert, and will utilize them to the extent they are helpful to the Court's review. The Court has not relied on the expert's opinion as to which requested fees should be denied or reduced, but has used the expert's demonstrative exhibits detailing the hours billed by firm, individual, date, and task in conducting a review of the requested fees. The Court has not attempted to discuss every challenged billing entry cited by the Defendants. Though parties are required to keep accurate and complete billing records, the occasional minor discrepancy, unclear entry, or unusually long day is to be expected in the volume of records involved here.

7 Indeed, the Court would consider the total hours and fees deemed appropriate by the Defendants to be quite low for a case of this nature, and would question the thoroughness of the work of attorneys who did not devote additional time to reviewing documents, preparing and responding to motions, and trial preparation.

case to The Masters Law Firm. Spilman was responsible for responding to a motion to dismiss, as well as a large portion of the discovery, including discovery-related motions practice, prior to transfer. The Court finds Spilman's hours to be somewhat excessive for the tasks performed, particularly prior to the filing of the complaint. Although it is appropriate to perform research and develop an understanding of the factual and legal issues while crafting a complaint, billing in excess of $130,000 before the first court filing appears excessive. In addition, many tasks involved more attorneys and professional staff than necessary to efficiently complete the task. Further, the Court finds that costs related to the transition between law firms should not be borne by the Defendants. That includes both billing for transition related tasks, and a portion of billing for discovery and other work that was necessarily duplicated by the two firms.[8] In total, the Court finds that a reduction of 15% of Spilman's hours and resultant fees is appropriate. The firm should be awarded a fee of $663,637.00

The Masters Law Firm submitted billable hours from only two people: Mr. Masters and Ms. Parmer. Mr. Masters requests $489,047.00 for his 752.38 hours, billed at his requested $650 hourly rate. As reduced by the Court to $550 per hour, Mr. Masters' total hours would result in an award of $413,809.00. Ms. Parmer requests $576,742.50 for 1,286.85 hours, billed at her requested $450 hourly rate. As reduced by the Court to $400 per hour, Ms. Parmer's total hours would result in an award of $514,740.00. The Masters Law Firm began representing the Plaintiffs while discovery was ongoing, and handled motions for summary judgment, motions in limine, various discovery disputes, and trial. A combined 2,039.23 hours does not appear excessive, given the complexity of the case and the stage at which The Masters Law Firm entered the litigation.

---

8 The Court has split the transition related deduction evenly between Spilman and The Masters Law Firm.

However, the Court finds that a reduction of 10% of Mr. Masters' hours and 5% of Ms. Parmer's hours is appropriate.   A 5% reduction for The Masters Law Firm's share of the transition related billing and duplication of efforts necessitated by the transition between law firms is applicable to both attorneys.   In addition, some of the hourly billing submitted by Mr. Masters includes vague entries and block-billing, for which the Court has applied an additional reduction to his hours.   *See, e.g., Wolfe v. Green*, No. CIV.A. 2:08-01023, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (Copenhaver, J.) (collecting cases and applying a flat percentage reduction for block-billing).

Applying the Court's reductions in rates and hours, Spilman is entitled to fees of $663,637.00.[9]   Mr. Masters' lodestar fees come to $372,428.10 for 677.142 hours of work at a rate of $550 per hour.   Ms. Parmer's lodestar fees total $489,003.00 for 1,222.5075 hours at a rate of $400 per hour.   Although the case was complex and the Plaintiffs were ultimately successful (pending appeal, of course), the Court does not find any upward or downward adjustment of the lodestar figure to be justified under these circumstances.   Therefore, the combined attorneys' fees awarded to the Plaintiffs total $1,525,068.10.

### C.  Expenses

The Defendants question expenses, citing the lack of support for the claimed costs, the high costs claimed for expert services, vague travel entries, excessive costs for photocopying, and the inclusion of online legal research services.   Spilman's expenses total $5,321.05, and The Masters Law Firm's total $260,628.89.   The Court finds the photocopying costs to be reasonable. Printers often charge a range for such services sometimes less than twenty-five cents per page and

---

9 Because timekeepers at all billing levels were involved in the duplicative and transition related tasks, as well as the excessive billing hours, the Court has applied a 15% reduction to the total fees, rather than applying it to each involved timekeeper separately.

sometimes much more per page. Billing for online research costs has been approved in this district, and the Court declines the opportunity to make any deduction to the online research costs billed by each Plaintiffs' firm. *See Wolfe v. Green*, No. CIV.A. 2:08-01023, 2010 WL 3809857, at *15 (S.D.W. Va. Sept. 24, 2010) (Copenhaver, J.); *Randolph v. PowerComm Constr., Inc.*, No. GJH-13-01696, 2016 WL 6462167, at *8 (D. Md. Oct. 31, 2016). The Court does not find the requested travel expenses to be excessive, and rejects any deduction for travel expenses. In general, given the parties' and the Court's familiarity with the claims, parties, and witnesses, the expenses are adequately explained. For example, expenses related to the depositions and transcripts of witnesses and experts who testified at trial do not require additional explanation.

However, the Court finds that The Masters Law Firm failed to adequately document the fees charged by Joseph Garofolo, one of their experts. A total of $172,779.13 in expert services were billed for Mr. Garofolo, beginning with a $10,000 retainer on October 29, 2014, and continuing through a post-trial payment of $18,818.83 on July 31, 2016. Some of the entries for Mr. Garofolo provide a brief explanation of the expense, such as preparation for the deposition of Jani Rachelson, the Defense expert. Most, however, are simply described as "expert services" or "professional services." The Court approves the $10,000 retainer, the $1,080.00 described as preparation for Ms. Rachelson's deposition, and the $29,456.84 and $18,818.83 billed after the trial, totaling $59,355.67. The remaining entries totaling $113,423.46 are not sufficiently described or supported, which precludes as assessment of reasonableness. As a result, the Court finds that it cannot properly be included in the costs billed to the Defendants. Thus, the Court awards expenses of $5321.05 to Spilman and $147,205.43 to The Masters Law Firm, for total expenses of $152,526.48.

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that attorneys' fees and expenses in the amount of **$1,677, 594.58** be awarded to the Plaintiffs.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        May 12, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA